UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

PAMELA S. SMALL,

Civil Action No.:

Plaintiff,

**COMPLAINT**

v.

THE STATE OF NEW YORK,
NEW YORK STATE DEPARTMENT
OF CORRECTIONS AND COMMUNITY SUPERVISION,
ATTICA CORRECTIONAL FACILITY,
CARL CUER, INDIVIDUALLY AND AS A CORRECTIONS OFFICER
FOR NEW YORK STATE DEPARTMENT OF
CORRECTIONS AND COMMUNITY SUPERVISION,
JAMES CONWAY, INDIVIDUALLY AND AS SUPERINTENDENT
FOR ATTICA CORRECTIONAL FACILITY;
SANDRA DOLCE, INDIVIDUALLY AND AS DEPUTY
SUPERINTENDENT OF PROGRAMS FOR
ATTICA CORRECTIONAL FACILITY,

Defendants.

---

Plaintiff, Pam Small, by her attorneys, Underberg & Kessler LLP, Jennifer A. Shoemaker, Esq., of counsel, alleges in the Complaint as follows:

### JURY DEMAND

1.      Plaintiff, Pamela S. Small, demands a trial by jury of all issues in this action.

### PRELIMINARY STATEMENT

2.      Plaintiff, Pam Small, seeks to recover damages against Defendants, the State of New York, New York State Department of Corrections and Community Supervision (hereinafter "NYSDOCC"), Attica Correctional Facility, Carl Cuer, individually and as a Corrections Officer for NYSDOCC (hereinafter "Cuer"), James Conway, individually and as

1

Superintendent of Attica Correctional Facility (hereinafter "Conway"),Sandra Dolce, individually and as Deputy Superintendent of Attica Correctional Facility (hereinafter "Dolce"), for unlawful discrimination, hostile work environment, sexual harassment, and retaliation based upon Plaintiff's sex and gender, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., (hereinafter "Title VII"), 42 U.S.C. § 1983 (hereinafter "§ 1983"), the New York State Human Rights Law § 290 et seq. of the Executive Law of the State of New York (hereinafter "Human Rights Law").

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over the Plaintiff's claims on this action pursuant to the United States Constitution, 42 U.S.C. §1983, 42 U.S.C. § 2000e-5(f)(3)(Title VII),. 28 U.S.C. § 1331, and 28 U.S.C. § 1343. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to adjudicate Plaintiffs claims under state statutory law.

4.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 and 42 U.S.C. § 2000e-5(f)(3).

5.      Plaintiff is an adult female and currently resides at 28 Colonial Avenue, Lancaster, New York 14086.

6.      The Defendant, the State of New York, maintains offices throughout the State of New York.

7.      The Defendant, NYSDOCC, maintains an office at the Harriman State Campus, 1220 Washington Avenue, Albany, New York.

2

8.     The Defendant, Attica Correctional Facility, maintains an office for business at 639 Exchange Street, Attica, New York, County of Wyoming.

9.     Defendants Cuer and Conway are, upon information and belief, adult male residents of the State of New York.

10.     Defendant Dolce is, upon information and belief, an adult female resident of the State of New York.

11.     At all relevant times, Defendant Cuer is and has been an employee for the NYSDOCC and is stationed at the Attica Correctional Facility, Attica, New York.

12.     At all relevant times Defendant Conway was the Superintendent of Attica Correctional Facility.

13.     At all relevant times Defendant Dolce was the Deputy Superintendent of Attica Correctional Facility.

14.     Upon information and belief, Defendants are, and at all times, mentioned, authorized to do business in the State of New York.

13.     Defendants Cuer, Conway and Dolce are persons subject to the mandates of § 1983.

14.     The Defendant, the State of New York, is an employer under Title VII as it is engaged in an industry affecting commerce and has 15 or more employees for each working day in 20 or more calendar weeks in the current or preceding calendar year.

15.     The Defendant, NYSDOCC, is an employer under Title VII as it is engaged in an industry affecting commerce and has 15 or more employees for each working day in 20 or more calendar weeks in the current or preceding calendar year.

16. The Defendant, Attica Correctional Facility, is an employer under Title VII as it is engaged in an industry affecting commerce and has 15 or more employees for each working day in 20 or more calendar weeks in the current or preceding calendar year.

17. The Defendant, the State of New York, is also an employer as defined in §292(5) of the Human Rights Law.

18. The Defendant, the State of New York Department of Correctional Services, is also an employer as defined in § 292(5) of the Human Rights Law.

19. The Defendant, Attica Correctional Facility, is also an employer as defined in § 292(5) of the Human Rights Law.

20. At all relevant times, Plaintiff took direction from the Defendant.

21. At all relevant times, the Defendants jointly exercised control over the terms and conditions of Plaintiffs employment.

22. Upon information and belief, the Defendants and their agents, jointly made the decisions that led to the violation of the Plaintiffs rights under § 1983, Title VII, and the Human Rights Law.

## FACTS

23. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

24. Defendant, New York State, has employed the Plaintiff since 2005.

25. In 2005, Plaintiff was hired by the Defendant, NYSDOCC, at the Attica Correctional Facility in Attica, New York, as a Teacher IV.

26. At all times hereinafter mentioned, Plaintiff was a satisfactory employee.

4

27.     Pursuant to Section 75 of the New York Civil Service Law, Plaintiff's employment is such that she cannot be removed or otherwise subjected to any disciplinary penalty except for incompetency or misconduct shown after a hearing upon stated charges.

28.     In addition, Plaintiff is a member of a Public Employees Federation, whose agreement with the State of New York bars plaintiff's termination without cause.

29.     By and through their course of conduct as alleged above, the NYSDOCC and their agents willfully violated Title VII, § 1983 and the Human Rights Law by subjecting the Plaintiff to a hostile work environment, discriminating against the Plaintiff and denying her equal terms and conditions of employment, harassing the Plaintiff, retaliating against the Plaintiff, and materially altering the terms and conditions of her employment because of her gender and sex.

30.     As a consequence thereof, Plaintiff has been caused to suffer injuries and damages in amounts to be determined at trial.

31.     On or about December 2009, Plaintiff became the ongoing target of sexually offensive behavior from Defendant Cuer, a Corrections Office.

32.     Plaintiff had direct contact with Defendant Cuer on a daily basis as he was a guard posted in her building where she taught classes to the inmates.

33.     On multiple occasions, Defendant Cuer made unwelcome sexual advances toward Plaintiff.

34.     Defendant Cuer stated that "he had been hearing voices from God," and that "God told him that his wife will die and that [Plaintiff would] become his next wife."

35.     Defendant Cuer continued to pursue Plaintiff, constantly coming to her classroom, dropping off notes, sending emails and trying to call Plaintiff on the phone.

36.     Defendant Cuer reacted to Plaintiff's protests about his inappropriate conduct by using retaliation against her in an attempt to intimidate her and to prevent her from appealing to his supervisors for assistance.

37.     Defendant Cuer made offensive statements to Plaintiff in the presence of her co-workers and inmates on a daily basis.

38.     Defendant Cuer's comments included that his wife was dying and she was divinely destined to become his wife after she passed away.

39.     Defendant Cuer repeatedly told Plaintiff that he loved her and took advantage of Plaintiff's devout Christian faith by saying God meant for them to be together and he had revelations from God about their relationship and future marriage.

40.     Defendant Cuer said it was "God's plan" for them to be together. Defendant Cuer wrote messages on Plaintiff's desk calendar, including "I love you." Defendant Cuer obsessively left notes for Plaintiff claiming his love for her and questioning why she will not follow God's word and return his love, how much it hurts to be rejected by her and how lonely his is without her love.

41.     Defendant Cuer referred to Plaintiff as "honey". In 2010, Defendant Cuer gave Plaintiff a Valentine's Day card telling her he loved her.

42.     Defendant Cuer quoted bible verses and psalms to support his love for Plaintiff and attempted to persuade or encourage her to return his love.

43.     Defendant Cuer told Plaintiff it was the devil who was keeping them apart.

44.     Defendant Cuer obsessively sent Plaintiff notes and texts harassing her.

45.     Beginning in January, 2010, Plaintiff told Defendant Cuer directly that she was offended by Defendant Cuer's inappropriate behavior and comments.

46.     Defendant Cuer did not halt his inappropriate language and conversations. On or about March 1, 2010, Plaintiff wrote a letter to Defendant telling him how angry she was and that he needed to stop bothering her.

47.     At or about that same time, Plaintiff reported what had been occurring with Defendant to her Acting Education Supervisor, Mr. Russell Worthington.

48.     Instead of taking further action, Mr. Worthington asked Plaintiff what she would like him to do.

49.     Mr. Worthington informed Plaintiff that he would repeat her report to Deputy Superintendent Dolce.

50.     In the days that followed, letters were placed in faculty mailboxes, including Plaintiff's mailbox, stating that Plaintiff was not understanding the message from God and was not being a good Christian.

51.     In addition, Defendant Cuer verbally told other employees that Plaintiff was involved in a relationship with the guard on the Third Floor of her school building.

52.     Defendant Cuer did this in retaliation for the note she wrote him.

53.     In March, 2010, Plaintiff was told by two corrections officers that they overheard Defendant Cuer talking about buying a small handgun that could be concealed in his pocket.

54.     Plaintiff feared for her life.

55.    The two corrections officers reported to Sergeant Erhardt that Defendant Cuer was exhibiting unusual and concerning behavior and that Plaintiff was possibly being harassed and could be harmed because Defendant Cuer was talking about buying and carrying a gun. They feared for Plaintiff's safety.

56.    Subsequently, Plaintiff was interviewed by Sergeant Mark Erhardt, and she reported what Defendant Cuer had been doing and saying to her.

57.    In fact, Plaintiff submitted a written report of Defendant Cuer's conduct.

58.    Sergeant Erhardt told Plaintiff he was going to talk to Defendant Cuer and there would be no more problems.

59.    Sergeant Erhardt told Plaintiff that if the behavior continued, there would be "stiff consequences" for Defendant Cuer.

60.    At or around the same time, Mr. Worthington reported Defendant Cuer's inappropriate conduct regarding Plaintiff to the Deputy Superintendent of Programs, Defendant Sandra Dolce.

61.    Defendant Dolce took no action at that time.

62.    On May 31, 2010, Plaintiff received notification that Defendant Cuer was voluntarily relocating from the school and would now be reporting to the visiting room.

63.    Despite his relocation to another building, Defendant Cuer continued to harass Plaintiff.

64.    In June, 2010, Plaintiff spoke with Attica Superintendent, Defendant James Conway. She requested Defendant Conway speak to Defendant Cuer. She also advised Defendant Conway that she feared retaliation for her complaint.

65.     Plaintiff was informed by Defendant Conway that he could do nothing without a formal written complaint.

66.     Plaintiff immediately submitted a formal written complaint to Defendant Conway.

67.     Also in June, 2010, Plaintiff received a new supervisor, Education Supervisor (General) Julie Goodrich.

68.     Mr. Worthington informed Goodrich of all the incidents, including the sexual harassment Plaintiff was facing from Defendant Cuer.

69.     Subsequently, Plaintiff also spoke to Goodrich about what she was experiencing.

70.     In June, 2010, Plaintiff was advised that her classroom was being moved and she would now be teaching on the Second Floor. Plaintiff was told it was being moved because they wanted to "keep an eye on her."

71.     Plaintiff felt like she was being retaliated against for complaining about Defendant Cuer and spoke to Goodrich. When Plaintiff complained, Goodrich told her to see Defendant Dolce.

72.     Plaintiff asked Defendant Dolce why they were moving her and Defendant Dolce responded that they were about to begin construction on Plaintiff's floor and thus she needed to move.   As of January, 2011, when Plaintiff went out on medical leave, no construction had begun.

73.     Plaintiff was being isolated in retaliation for reporting Defendant's inappropriate behavior.

74. Subsequently, an anonymous tip came in to administration that an inmate in A block threatened Plaintiff's life. Plaintiff's room was shut down and an investigation was immediately commenced. Defendants called in several inmates and spoke to them about Plaintiff's class and asked who was entering and exiting the room. Around June, 2010, Plaintiff began noticing that Defendant Cuer was parking near her vehicle in the parking lot.

75. In July, 2010, Plaintiff found a piece of paper with two very large eyes drawn on it and left on her car windshield. She thought this was a threatening note left by Defendant Cuer telling her, "I am watching you!"

76. Plaintiff gave the drawing to Ms. Goodrich. Ms. Goodrich forwarded the information she received from Plaintiff on to Defendant Dolce.

77. Plaintiff continued to receive text messages and letters from Defendant Cuer.

78. On August 16, 2010, Plaintiff met with Ms. Goodrich and Defendant Dolce because Defendant Cuer was outside plaintiff's home the night before from 1:00 a.m. to 4:00 a.m.

79. Defendant Dolce told Plaintiff she had to submit a formal written complaint.

80. Plaintiff informed Defendant Dolce that she had already submitted a formal written complaint to Defendant Conway.

81. Deputy Superintendent Dolce told Plaintiff to address this complaint to Defendant Dolce.

82. During this meeting it was mentioned that "this is why Mr. Conway says that females do not belong in a max."

83. It was also stated that Defendant Conway had announced his retirement date and had "one foot out the door."

84. Defendant Dolce informed Plaintiff that it was a "very difficult case" and that her "hands were tied" because of Defendant Cuer's union.

85. Defendant Dolce further stated that she was not getting much cooperation from Defendant Conway.

86. Defendant Dolce further stated that Defendant Conway does not feel that women should even be working in the facility.

87. Defendant Dolce informed Plaintiff that she would contact the Office of Diversity Management in Albany because she felt the Attica ODM was unable to properly respond.

88. Defendant Dolce suggested that Plaintiff contact local law enforcement to press criminal charges because "they had done all they could do 'in-house.'"

89. On August 16, 2010, Plaintiff submitted a second formal written complaint about Defendant Cuer's behavior.

90. Over the next few months, Plaintiff continued to report every time Defendant Cuer harassed her in some fashion.

91. In addition, Ms. Goodrich and Plaintiff asked each other weekly if the other had heard anything from Diversity Management. The answer was always no.

92. During this time period, Plaintiff began to notice that she had little to no support from the guards in her school building, which is a very dangerous place to be. If you don't have the guards to protect you and the inmates become aware of this, you could

be in very serious danger.

93.    Plaintiff saw Defendant Cuer drive by her home on several occasions. He continued to text her threatening messages and electronic messages.

94.    In October, 2010, Plaintiff notified Ms. Goodrich that Defendant Cuer had e-mailed Plaintiff telling her that she was pregnant with someone else's child and that bad things were going to happen to her.

95.    Ms. Goodrich reported the matter to Defendant Dolce, who forwarded the complaint to the Office of Diversity Management.

96.    To date, Plaintiff has never been contacted by the Office of Diversity Management.

97.    With Defendant Cuer's threatening behavior continuing and Plaintiff feeling that the Diversity Management was not taking this seriously and doing enough to protect her or control Defendant's behavior, in November, 2010, Plaintiff, following the earlier advice of Defendant Dolce, called the police and filed a report.

98.    The Police Officer told her she had to obtain an Order of Protection, which Plaintiff did.

99.    Defendant Cuer was subsequently arrested for violating the Order of Protection.

100.    The Court date for the Order of Protection was scheduled for January 11, 2011.

101.    In December, Plaintiff requested time off so that she could attend the court date.

102.    Despite being the one who suggested Plaintiff file criminal charges, Defendant Dolce would not grant Plaintiff's time off request so she could attend the court appearance.

103.    Throughout 2010 and into 2011, Plaintiff was so stressed and filled with anxiety over what was occurring that she began to notice her health deteriorating.

104.    Plaintiff developed severe acne and began having horrible stomach and headaches. She began to miss a lot of work, using precious sick time.

105.    Plaintiff had never been sick prior to this time. She began to gain weight.

106.    Plaintiff met with a representative from the Inspector General's Office in mid-December, 2010.

107.    The representative from the Inspector General's Office told Plaintiff that Defendant Cuer was "crazy" and that Diversity Management had "dropped the ball".

108.    Plaintiff provided the representative from the Inspector General's Office with copies of Defendant's e-mails, cards, notes, etc.

109.    The representative from the Inspector General's Office told Plaintiff he would investigate the matter and get back to her.

110.    Plaintiff never heard from the representative from the Inspector General's Office, or any other person from the Inspector General's Office, again.

111.    When Plaintiff returned to work following Christmas break 2010, she was falsely accused of having an inappropriate relationship with an inmate.

112.    There was no merit to this complaint and again this was further retaliation against Plaintiff for the problems pertaining to the Defendant Cuer.

113.    By January, 2011, Plaintiff was very distraught. She had been sick every month since September. She could not think straight; she could not sleep; she was filled with anxiety and was constantly looking over her shoulder. She had gained 25 pounds, was overweight, had developed a twitch in her eye, her jaw was cracking from clenching her teeth at night, developed horrible acne, and had difficulty getting out of bed in the morning.

114.    In January 2011, Plaintiff was approached by Captain Robinson, who asked her if she "wanted to talk."

115.    Captain Robinson said he had heard that what was occurring with Defendant Cuer was the result of Plaintiff's relationship with Cuer "going bad."

116.    Plaintiff strongly objected to this and told Captain Robinson what was happening to her, including that she had an order of protection against Defendant Cuer.

117.    Captain Robinson expressed surprise about what Plaintiff told him. He had no idea that Plaintiff had an order of protection against Defendant Cuer.

118.    The final straw for Plaintiff occurred when she had a problem with an inmate in her classroom. She wrote a ticket for the inmate and called the guard. She overheard the guard tell the inmate, "If you need a witness, call me."

119.    Indeed, the guard did attend the inmate's hearing and the ticket was dismissed.

120.    Plaintiff knew at that precise moment that she was alone in that prison. No guard would protect her again.

121.    Plaintiff was physically unable to return to work after that time.

122.    January 28, 2011, was her last day of work at the Attica Correctional Facility.

123. Plaintiff was removed from work by her physician due to injuries resulting from Defendants' conduct.

124. Plaintiff filed a claim with Workers' Compensation.

125. Plaintiff has since been diagnosed with Post Traumatic Stress Disorder ("PTSD").

126. On February 4, 2012, Defendants terminated Plaintiff's employment.

127. Plaintiff no longer enjoys activities she used to. Plaintiff does not go to church, does not swim in her pool, does not go out of the house unless absolutely necessary for doctors' appointments or the like, even sending her children to the store for groceries when she can. She does not socialize or see friends. She is depressed and filled with anxiety.

128. Plaintiff nearly lost her home because she had no income until Workers' Compensation was approved for her in September, 2011. She was forced to give away her dog because she could no longer afford to feed or take care of the animal.

129. As a result of Defendants' reprehensible conduct, the Plaintiff has suffered physical injury, mental anguish, stress, humiliation, embarrassment and financial loss.

130. The unwelcome treatment of Plaintiff was based on her gender and sex.

131. Defendant's harassment of Plaintiff was pervasive and severe, and created an intimidating, hostile and offensive work environment for the Plaintiff.

132. The hostile work environment adversely affected the Plaintiff's conditions of employment.

133. A reasonable person would have considered the environment Plaintiff encountered at the Department of Corrections to be hostile and Plaintiff herself considered the environment to be hostile.

134. On or about March 11, 2011, Plaintiff filed a Verified Complaint charging Defendants with discrimination with the New York State Division of Human Rights.

135. The New York State Division of Human Rights determined after investigation that there was probable cause to believe that the Respondents were engaging in the unlawful discriminatory practices complained of, and retaliation.

136. On or about April 27, 2012, Plaintiff requested an administrative dismissal from the New York State Division of Human Rights.

137. On or about September 20, 2012, Plaintiff received a copy of a dismissal and notice of rights, (Right to Sue) letter from the New York State Division of Human Rights dated September 14, 2012. A copy is attached to this Complaint as **Exhibit A**.

138. The Defendants undertook all of the actions and omissions alleged above either directly or through their agents who were authorized to take such actions and omissions.

### AS AND FOR PLAINTIFF'S FIRST CLAIM
### FOR RELIEF UNDER TITLE VII AGAINST THE STATE OF NEW YORK,
### NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY
### SUPERVISION, AND ATTICA CORRECTIONAL FACILITY
### FOR UNLAWFUL DISCRIMINATION AND HOSTILE WORK ENVIORNMENT

139. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

140. By and through their course of conduct as alleged above, the State of New York, NYSDOCC, and Attica Correctional Facility, and their agents willfully violated Title VII, 42 U.S.C. § 2000e et seq., by subjecting Plaintiff to a hostile work environment, discriminating against the Plaintiff, and denying her equal terms and conditions of employment, harassing the Plaintiff, retaliating against the Plaintiff, and materially altering the terms and conditions of her employment because of her gender and sex.

141. As a consequence thereof, Plaintiff has been caused to suffer injuries and damages in amounts to be determined at trial.

**AS AND FOR PLAINTIFF'S SECOND CLAIM FOR RELIEF
UNDER TITLE VII AGAINST THE STATE OF NEW YORK,
NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY
SUPERVISION, AND ATTICA CORRECTIONAL FACILITY
FOR UNLAWFUL RETALIATION**

142. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

143. By and through their course of conduct as alleged above, the State of New York, NYSDOCC, and Attica Correctional Facility, and their agents willfully violated Title VII, 42 U.S.C. § 2000e et seq., by retaliating against the Plaintiff.

144. As a consequence thereof, Plaintiff has been caused to suffer injuries and damages in amounts to be determined at trial.

**AS AND FOR PLAINTIFF'S THIRD CLAIM FOR RELIEF UNDER THE
NEW YORKSTATE HUMAN RIGHTS LAW AGAINST THE STATE OF NEW YORK,
NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY
SUPERVISION, AND ATTICA CORRECTIONAL FACILITY
FOR UNLAWFUL DISCRIMINATION AND HOSTILE WORK ENVIRONMENT**

145. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

146.     By and through their course of conduct as alleged above, the State of New York, NYSDOCC, and Attica Correctional Facility, and their agents willfully the Human Rights Law by subjecting the Plaintiff to a hostile work environment, harassing the Plaintiff, retaliating against the Plaintiff, and materially altering the terms and conditions of her employment because of her gender and sex.

147.     As a consequence thereof, Plaintiff has been caused to suffer injuries and damages in amounts to be determined at trial.

## AS AND FOR PLAINTIFF'S FOURTH CLAIM FOR RELIEF UNDER THE NEW YORK STATE HUMAN RIGHTS LAW AGAINST THE STATE OF NEW YORK, NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION, AND ATTICA CORRECTIONAL FACILITY FOR UNLAWFUL RETALIATION

148.     Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

149.     By and through their course of conduct as alleged above, the State of New York, NYSDOCC, and Attica Correctional Facility, and their agents willfully the Human Rights Law by retaliating against the Plaintiff.

150.     As a consequence thereof, Plaintiff has been caused to suffer injuries and damages in amounts to be determined at trial.

## AS AND FOR PLAINTIFF'S FIFTH CLAIM FOR RELIEF UNDER SECTION 1983 AGAINST CUER, CONWAY AND DOLCE FOR UNLAWFUL DISCRIMINATION AND HOSTILE WORK ENVIRONMENT

151.     Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

152.     By and through their course of conduct as alleged above, the Defendants,

Cuer, Conway and Dolce, violated Section 1983 by subjecting the Plaintiff to a hostile work environment, discriminating against the Plaintiff, harassing the Plaintiff, retaliating against the Plaintiff, and materially altering the terms and conditions of her employment because of her gender and sex, and thereby depriving her of the equal protection of the laws under the Fourteenth Amendment to the United States Constitution.

153.    As a consequence thereof, Plaintiff has been caused to suffer injuries and damages in amounts to be determined at trial.

## AS AND FOR PLAINTIFF'S SIXTH CLAIM FOR RELIEF UNDER THE NEW YORK STATE HUMAN RIGHTS LAW AGAINST DEFENDANTS CUER, CONWAY AND DOLCE FOR <u>AIDING AND ABETTING UNLAWFUL DISCRIMINATION</u>

154.    Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

155.    By and through their course of conduct as alleged above, the Defendants, Cuer, Conway and Dolce, willfully violated the Human Rights Law by aiding and abetting the unlawful discrimination and hostile work environment against the Plaintiff based on her sex and gender.

156.    As a consequence thereof, Plaintiff has been caused to suffer injuries and damages in amounts to be determined at trial.

## AS AND FOR PLAINTIFF'S SEVENTH CLAIM FOR RELIEF UNDER THE NEW YORK STATE HUMAN RIGHTS LAW AGAINST DEFENDANTS CUER, CONWAY AND DOLCE FOR <u>RETALIATION</u>

157.    Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

19

158.    By and through their course of conduct as alleged above, the Defendants, Cuer, Conway and Dolce, willfully violated the Human Rights Law by harassing and treating the Plaintiff differently in retaliation.

159.    As a consequence thereof, Plaintiff has been caused to suffer injuries and damages in amounts to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE,** the Plaintiff prays that this Court:

(a)    Accepts jurisdiction over this matter,

(b)    Accepts Impanels and charges a jury with respect to the claims for relief; and

(c)    Awards the following damages against Defendants:

i.    Back pay, front pay, and all benefits along with pre and post judgment interest, in amounts to be determined at trial;

ii.    Punitive, liquidated, and compensatory damages including, but not limited to, damages for pain and suffering, anxiety, humiliation, physical injuries and emotional and physical distress in order to compensate her for the injuries she has suffered and to signal to other employers that discrimination in employment is repulsive to legislative enactments, in amounts to be determined at trial;

iii.    Attorneys' fees, costs, and expenses as provided for by the applicable statutes; and

iii.    Any other relief which this Court deems just and proper.

20

Dated: Dec. 13 , 2012
Rochester, New York

UNDERBERG & KESSLER LLP

By: _Jennifer A. Shoemaker_

Jennifer A. Shoemaker, Esq., of Counsel
Attorneys for Plaintiff
300 Bausch & Lomb Place
Rochester, New York 14604
Telephone: (585) 258-2800

21

# EXHIBIT

# A

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: | **Pam Small**<br>**28 Colonial Ave.**<br>**Lancaster, NY 14086** | From: | **New York District Office**<br>**33 Whitehall Street**<br>**5th Floor**<br>**New York, NY 10004** |
|---|---|---|---|

| ☐ | *On behalf of person(s) aggrieved whose identity is*<br>*CONFIDENTIAL (29 CFR §1601.7(a))* | |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **16G-2011-01684** | **Holly M. Woodyard,**<br>**Investigator** | **(212) 336-3643** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☐ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☒ Other *(briefly state)* **Charging Party wishes to pursue matter in Federal District Court.**

### - NOTICE OF SUIT RIGHTS -

*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

_____

**Kevin J. Berry,**
**District Director**

September 14, 2012

*(Date Mailed)*

Enclosures(s)

cc:

| **NEW YORK STATE, DEPARTMENT OF**<br>**CORRECTIONS & COMMUNITY SUPERVISION**<br>**Attn: Herman Reinhold, Esq. Sr. Attorney**<br>**The Harriman State Campus, Building 2**<br>**1220 Washington Avenue**<br>**Albany, NY 12226-2050** | **Jennifer A. Shoemaker, Esq.**<br>**Underberg & Kessler, LLP**<br>**300 Bausch & Lomb Place**<br>**Rochester, NY 14604** |
|---|---|

Enclosures(s)

cc:   **NYS DEPT. OF CORRECTIONS & COMMUNITY
      SUPERVISION
      Attn: Carl Cuer, Correctional Officer
      c/o Attica Correctional Facility
      69 Exchange Street
      Attica, NY 14011**