UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

PAMELA S. SMALL,

Plaintiff,

v.

THE STATE OF NEW YORK, et al.,

Defendants.

**DECISION AND ORDER**
12-CV-1236S

## I. INTRODUCTION

Plaintiff, Pamela S. Small, brings this action against Defendants the State of New York, the New York State Department of Corrections and Community Supervision ("DOCCS"), Attica Correctional Facility, Corrections Officer Carl Cuer, Superintendent James Conway, and Deputy Superintendent of Programs Sandra Dolce, asserting claims for hostile work environment, retaliation, and sexual harassment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and 42 U.S.C. § 1983, as well as supplemental state law claims under New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.* Officer Cuer, Superintendent Conway, and Deputy Superintendent Dolce have moved for summary judgment, seeking dismissal of Small's claims against them under Federal Rule of Civil Procedure 56. For the reasons discussed below, Officer Cuer's motion is denied; Superintendent Conway and Deputy Superintendent Dolce's motion is granted in part and denied in part.

## II. BACKGROUND[1]

Small worked as a school teacher at Attica Correctional Facility ("Attica") from 2005 to 2012. As a teacher, she was considered a civilian employee and reported directly to her Academic Supervisors, Acting Supervisor Russell Worthington and later Supervisor Julie Goodrich. Worthington and Goodrich, in turn, reported to Defendant Dolce, who was the Deputy Superintendent of Program Services and oversaw the academic, recreational and vocational programs at Attica during the relevant period. Deputy Superintendent Dolce reported to Defendant Conway, who was the Superintendent of Attica and was responsible for oversight of the entire prison during the relevant period.

Defendant Cuer is a corrections officer at Attica and has held that position since 1989. Between 2005 and 2010, Officer Cuer and Small both worked in Attica's academic building, a three-story structure with two corrections officers posted on the first floor, and one officer posted on each of the second and third floors. Officer Cuer served as the first floor officer in the academic building, a position known as the "Hall Captain." The Hall Captain is responsible for ensuring the safety of the civilian academic employees working in the academic building.

While Officer Cuer was serving as Hall Captain, he struck up a friendship with Small. They discussed their shared Christian faith, and Officer Cuer worked on Small's car and assisted her with yardwork. However, beginning in December 2009, Officer Cuer began making alarming comments to Small. Specifically, Officer Cuer told Small that he had been speaking with God, that God had informed him that his wife would

[1] The facts are derived principally from the parties' Local Rule 56 Statements, the parties' declarations, and exhibits attached thereto. Only the facts necessary to the resolution of the motions are recounted below. The facts are undisputed unless otherwise stated.

soon die, and that God had chosen Small to be Officer Cuer's new wife. Officer Cuer began sending Small frequent emails, texts, and letters, insisting that God wanted them to be together. Officer Cuer delivered some of these messages at work, including by writing "I love you" on the desk calendar in Small's classroom and leaving a note on her desk in which he offered to apply lotion to her "hard to reach spots", which Small took to be a sexual advance. Officer Cuer was stationed on the first floor of the academic building and a different corrections officer was posted to the third floor where Small's classroom was located. Small alleges that, although he had no job-related reason to be there, she frequently saw Officer Cuer pacing outside her classroom and staring in her window. She also alleges that Officer Cuer often came into the classroom while she was teaching and attempted to discuss personal matters. Officer Cuer told a co-worker about his plans to marry Small, as well as his belief that God would kill his wife. Other officers also overheard Officer Cuer discussing plans to buy a gun that could be easily concealed. Small felt threatened and upset by Officer Cuer's communications, particularly because he was adamant that she was breaching her Christian faith by refusing to be with him.

Small states that she never welcomed or reciprocated Officer Cuer's romantic advances. She alleges that, although she initially tried to discourage Officer Cuer while remaining on friendly terms, Officer Cuer's behavior became increasingly intense and threatening. In March 2010, Small wrote Officer Cuer a letter requesting that he cease all contact and communications with her. She verbally complained to Superintendent Conway that Officer Cuer was harassing her and wrote a letter to Officer Cuer's supervisor, Sergeant Erhardt. Small also reported the advances to her direct

supervisor, who reported the issue to Deputy Superintendent Dolce. Superintendent Conway did not speak to Officer Cuer himself about Small's allegations, but instructed Sergeant Erhardt to direct Officer Cuer to cease non-job related contact with Small.

The contact did not stop. Instead, Officer Cuer continued to engage with Small in ways that she found harassing and threatening. For example, in June 2010, Small found a note on her car in the Attica parking lot that she believed had been placed there by Officer Cuer. The note included a drawing of eyes, which Small took as a message that Officer Cuer was watching her, as well as a drawing that meant "I love you". In August 2010, Small alleges that Officer Cuer sent her a number of text messages in the early morning hours. Small believes that Officer Cuer sent the messages from outside her house because her motion lights went on, she could hear a vehicle outside, and because of the content of the texts. She alleges that Officer Cuer accused her of having a man inside her house and demanded that she come out to speak with him. In October 2010, Small received an email from Officer Cuer, stating that God had told him Small was pregnant and did not know who the father was, and referring to Small by the name of a woman from the Bible who was struck down after failing to obey God. In November 2010, Small sought and obtained an order of protection against Officer Cuer through local law enforcement. While the order of protection was in place, Small alleges that Attica officials allowed Officer Cuer to come and go from the prison with no restrictions, though Small was instructed to restrict her movement, use side doors, and to have "supervision" when moving about the facility. Officer Cuer was later arrested for violating the order of protection.

Throughout this period, Small and her direct supervisors made several verbal

reports to Superintendent Conway and Deputy Superintendent Dolce. Small alleges that Superintendent Conway and Deputy Superintendent Dolce were first made aware of Officer Cuer's alarming statements in March 2010. Between March and August, Small made further verbal complaints, but states that she was apprehensive about filing a written complaint against Officer Cuer because she feared retaliation and needed protection from the corrections officers while at work. Small was also aware that Officer Cuer had a personal relationship with many Attica employees, including Superintendent Conway. Small alleges that Superintendent Conway and Deputy Superintendent Dolce refused to escalate her complaint or take any action until she made a complaint in writing, which she finally did. Small alleges that Superintendent Conway and Deputy Superintendent Dolce failed to follow DOCCS' guidelines by refusing to escalate her verbal complaints. Her written complaints were eventually escalated to the DOCCS' Office of Diversity Management ("ODM"). Small never heard back from ODM regarding the complaints. It is undisputed that Officer Cuer was not disciplined in connection with Small's complaints, and that he remains an employee in good standing at Attica.

Small alleges that the complaints led to several instances of retaliation. In June 2010, Small was made to move classrooms from the third floor to the second floor of the academic building. Small alleges that the third floor was a clearly preferable location because the third floor classrooms were off-limits to all personnel at night and on the weekends, and that first and second floor classrooms were subject to significant property damage. Small alleges that the move was made in retaliation for Small's complaints against Officer Cuer. Officer Cuer states that, although he lobbied for the classroom move, it was not in retaliation, but simply to keep teachers safe because the

third floor had less supervision. Deputy Superintendent Dolce told Small that the classroom change was due to Deputy Superintendent Dolce's concerns over female teachers being on the third floor and because construction or repairs were to take place on the third floor. It is disputed whether such construction or repairs actually took place. Small also alleges that Officer Cuer and other corrections officers failed to provide critical information necessary for her work by failing to put certain documents into her staff mailbox. She contends that Officer Cuer used his position as both a corrections officer and the Hall Captain to control information that was needed for her to successfully and safely complete her duties. Officer Cuer also submitted a complaint against Small, accusing her of having an inappropriate relationship with an inmate. The DOCCS investigator who looked into the complaint found it to be without merit.

Small alleges that her health deteriorated due to Cuer's actions and the prison's failure to respond. When she ran out of sick leave, DOCCS terminated her employment. Small alleges that she has since been diagnosed with Post Traumatic Stress disorder. Small filed a claim of discrimination with the State Division of Human Rights and the Equal Employment Opportunity Commission ("EEOC") on March 11, 2011. Upon receiving a dismissal and notice of right to sue, Small brought this action.

## III. LEGAL STANDARDS

"A motion for summary judgment may properly be granted . . . only where there is no genuine issue of material fact to be tried, and the facts as to which there is no such issue warrant the entry of judgment for the moving party as a matter of law." Kaytor v. Elec. Boat Corp., 609 F.3d 537, 545 (2d Cir. 2010). A court's function on a summary judgment motion "is not to resolve disputed questions of fact but only to determine

whether, as to any material issue, a genuine factual dispute exists." Kaytor, 609 F.3d at 545 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2003) *cert. denied*, 540 U.S. 811, 124 S. Ct. 53, 157 L. Ed. 2d 24 (2003) (quoting Anderson, 477 U.S. at 248).

## IV. DISCUSSION

In her Amended Complaint, Small claims that Officer Cuer, Superintendent Conway, and Deputy Superintendent Dolce violated 42 U.S.C. § 1983 and NYSHRL by unlawfully discriminating against her through the creation of a hostile work environment and retaliation. She further claims that they aided and abetted unlawful discrimination in violation of NYSHRL § 296(6). Officer Cuer, Superintendent Conway, and Deputy Superintendent Dolce move for summary judgment dismissing these claims.

### A. Section 1983 Claims

An action under § 1983 has two elements: the defendant must (1) act under "color of state law"[2] to (2) deprive the plaintiff of a statutory or constitutional right. Back v. Hastings on Hudson Union Free Sch. Dist., 365 F.3d 107, 122 (2d Cir. 2004). Claims of sexual harassment brought under § 1983 are analyzed under Title VII jurisprudence and the McDonnell-Douglas burden-shifting framework. Jemmott v. Coughlin, 85 F.3d 61, 67 (2d Cir. 1996); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). The Second Circuit describes this framework as follows:

[2] Under § 1983 analysis, "state employment is generally sufficient to render the defendant a state actor." West v. Atkins, 487 U.S. 42, 49, 108 S. Ct. 2250, 2255, 101 L. Ed. 2d 40 (1988); see also Patterson v. County of Oneida, New York, 375 F.3d 206, 230 (2d Cir. 2004). None of the three defendants challenges this element, and all were employed by the state during the relevant period.

> [T]he plaintiff bears the initial burden of establishing a *prima facie* case of discrimination . . . . If the plaintiff does so, the burden shifts to the defendant to articulate some legitimate, non-discriminatory reason for its action. . . . If such a reason is provided, plaintiff may no longer rely on the presumption raised by the *prima facie* case, but may still prevail by showing, without the benefit of the presumption, that the employer's determination was in fact the result of . . . discrimination.

Holcomb v. Iona College, 521 F.3d 130, 138 (2d Cir. 2008) (citations and internal quotation marks omitted). NYSHRL discrimination claims "are [also] evaluated using the same analytical framework used in Title VII actions." Burniche v. General Elec. Automation Servs., Inc., 306 F. Supp. 2d 233, 238-39 (N.D.N.Y. 2004) (quoting Farias v. Instructional Sys., Inc., 259 F.3d 91, 98 (2d Cir. 2001)).

Section 1983 may be utilized "against a public official for improper sexual conduct toward an employee that create[s] a hostile work environment." Saulpaugh v. Monroe Community Hosp., 4 F.3d 134, 143-44 (2d Cir. 1993), *cert. denied*, 510 U.S. 1164, 114 S. Ct. 1189, 127 L. Ed. 2d 539 (1994). "To establish a hostile-work environment claim under Section 1983, a plaintiff must demonstrate that (1) she was intentionally harassed; (2) the harassment was based on her race or gender; (3) such actions were taken under color of state law; and (4) the harassment was so severe as to render the work environment hostile to her." Rodriguez v. City of New York, 644 F. Supp. 2d 168, 199 (E.D.N.Y. 2008). When evaluating a hostile work environment claim, courts should consider the totality of the circumstances, such as the frequency and severity of the conduct, whether it was physically or verbally threatening, and whether it unreasonably interferes with the employee's job performance. Rivera v. Rochester Genesee Reg'l Transp. Auth., 743 F.3d 11, 20 (2d Cir. 2014). The analysis has both "objective and subjective elements: the misconduct shown must be severe or pervasive

enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive." Id. (internal quotation omitted).

Both 1983 and the NYSHRL prohibit employers from retaliating against employees who complain about sexual discrimination. To establish a *prima facie* case of retaliation, a plaintiff must demonstrate that "(1) she was engaged in an activity protected under Title VII; (2) the employer was aware of plaintiff's participation in the protected activity; (3) the employer took adverse action against plaintiff; and (4) a causal connection existed between the plaintiff's protected activity and the adverse action taken by the employer." Gordon v. New York City Bd. of Educ., 232 F .3d 111, 116 (2d Cir. 2000) (internal quotation omitted). The substantive elements of a hostile work environment claim or retaliation claim under the NYSHRL are essentially the same as under § 1983. See Pedrosa v. City of New York, No. 13 CIV. 01890 LGS, 2014 WL 99997, at *7 (S.D.N.Y. Jan. 9, 2014); Smith v. Town of Hempstead Dep't of Sanitation Sanitary Dist. No. 2, 798 F. Supp. 2d 443, 451 (E.D.N.Y. 2011) ("The standard for showing a hostile work environment under Title VII, . . . Section 1983, and the New York State Human Rights Law is essentially the same."); McMenemy v. City of Rochester, 241 F.3d 279, 283 n. 1 (2d Cir. 2001) (retaliation claims under the NYSHRL are treated the same as retaliation claims under Section 1983). NYSHRL § 296(6) states that it is unlawful discriminatory practice "for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under [the NYSHRL], or attempt to do so." N.Y. Exec. Law § 296(6).

1. Officer Cuer

As an initial matter, Officer Cuer seems confused as to the claims against him. He argues that he cannot have liability under Title VII because he is not an employer, and that Small may only make claims for conduct that occurred within the statutory period set by 42 U.S.C. § 2000e-5(e)(1), namely, the 300-day period prior to Small's filing her EEOC complaint on March 12, 2011. However, Officer Cuer is not named in Small's Title VII counts.[3] Small names Officer Cuer only in her claims for relief under § 1983 and NYSHRL, which do not limit claims against co-workers and which have three-year statutes of limitations.[4] Officer Cuer's arguments are therefore misplaced.

With respect to the federal and state claims made against him, Officer Cuer focuses primarily on the facts rather than the law. He argues that he had no authority over Small, and no ability to impact where her classroom was located. He also argues that he had a rational explanation for making the complaint alleging that Small had an inappropriate relationship with an inmate. Finally, he argues that he had a close friendship with Small, and that she considered him a "great guy." These arguments as to the material facts of the case demonstrate why sexual harassment claims are seldom well suited for summary judgment. See Dabney v. Christmas Tree Shops, 958 F. Supp. 2d 439, 458 (S.D.N.Y. 2013), *aff'd*, 588 Fed. App'x 15 (2d Cir. 2014) ("[T]he Second Circuit has cautioned [that] the existence of a hostile work environment is a mixed

[3] The Amended Complaint contains two Title VII claims against the State of New York and DOCCS. The individual defendants, including Officer Cuer, are not named in the Title VII claims.

[4] This Court further notes that, even under the 300-day statute of limitations applicable to Small's Title VII claims, all instances of discrimination after May 15, 2010 are not time-barred. Further, that, "[u]nder the continuing violation exception to the Title VII limitations period, if a Title VII plaintiff files an EEOC charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone." Lambert v. Genesee Hospital, 10 F.3d 46, 53 (2d Cir. 1993), *cert. denied*, 511 U.S. 1052, 114 S. Ct. 1612, 128 L. Ed. 2d 339 (1994).

question of law and fact which is especially well-suited for jury determination and summary judgment may only be granted when reasonable minds could not differ on the issue." (internal quotation marks and citation omitted)).

Officer Cuer's sole legal argument is that Small's allegations against him do not rise to the level of a constitutional violation. He contends that the alleged conduct did not "transcend[ ] coarse, hostile and boorish behavior" so as to be actionable under § 1983. See Annis v. Cnty. of Westchester, N.Y., 36 F.3d 251, 254 (2d Cir. 1994). Anti-discrimination statutes are not a "general civility code," see Bickerstaff v. Vassar College, 196 F.3d 435, 452 (2d Cir. 1999), and a few isolated incidents of "boorish or offensive use of language" are generally insufficient to establish a hostile work environment. See Benette v. Cinemark U.S.A., Inc., 295 F. Supp. 2d 243, 251-252 (W.D.N.Y. 2003); Kotcher v. Rosa & Sullivan Appliance Ctr., 957 F.2d 59, 62 (2d Cir. 1992) ("incidents must be repeated and continuous; isolated acts or occasional episodes will not merit relief"); Carrero v. New York City Hous. Auth., 890 F.2d 569, 577 (2d Cir. 1989) ("The incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive."). However, when the incidents are extremely frequent, particularly over a short period of time, it is reasonable to infer that work conditions were "altered for the worse." See Fitzgerald v. Henderson, 251 F.3d 345, 358 (2d Cir. 2001) ("While a mild, isolated incident does not make a work environment hostile, the test is whether the harassment is of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse.") (internal quotation omitted)); see also Alfano v. Costello, 294 F.3d 365, 379 (2d Cir. 2002) ("There is no fixed number of incidents that a plaintiff must endure in order to

establish a hostile work environment; rather, we view the circumstances in their totality, examining the nature, severity, and frequency of the conduct.").

Making all inferences in Small's favor and viewing the circumstances in their totality, this Court finds that Small has presented sufficient evidence that Cuer's attentions "transcended coarse, hostile and boorish behavior," see Annis, 36 F.3d at 254, and strayed into the realm of alarming and threatening conduct. It is not disputed that Small notified Officer Cuer no later than March 2010 that she found his attentions and communications annoying, but Officer Cuer continued to seek her attention through notes, emails, and texts for several months. She alleges that Cuer came to her house in the early morning, accused her of violating God's plans, and left notes that he was watching her. Small sought, and was granted, an order of protection against Officer Cuer, which he violated resulting in his arrest. Because she was so frightened at work, Small alleges that she fell ill. "The instances of harassment articulated by [Small] in her [Amended Complaint] are more than single, isolated examples of verbal abuse." See Dunbar v. Cty. of Saratoga, 358 F. Supp. 2d 115, 124 (N.D.N.Y. 2005) (denying motion for summary judgement where plaintiff alleged "eight specific incidents with decidedly sexual overtones over the course of her fifteen months of active employment" and other general allegations as to frequency). Because Small has submitted evidence demonstrating a series of actions and incidents sufficiently pervasive and material to allow a reasonable jury to find that Small was subject to an objectively hostile working environment, Officer Cuer's motion for summary judgment as to Small's hostile working environment claim will be denied.

Further, a reasonable finder of fact could find that moving Small's classroom to

the less-preferred second floor and the investigation of her alleged romantic relationship with an inmate were materially adverse employment actions brought on by her complaints against Officer Cuer, a favored employee. A plaintiff sustains an adverse employment action if he or she endures a "materially adverse change" in the terms and conditions of employment, that is, a change in working conditions "more disruptive than a mere inconvenience or an alteration of job responsibilities." Galabya v. N.Y. City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000) (internal quotation omitted). Officer Cuer contends that there were legitimate reasons for moving Small's classroom and for making the complaint against her. However, questions of fact remain as to whether those reasons are pretext for discrimination. Because material questions of fact remain as to whether Small has established a *prima facie* case, and whether defendants had legitimate reasons for taking adverse employment action against her, Officer Cuer's motion for summary judgment as to Small's retaliation claim will be denied.

Because the elements of Small's claims under NYSHRL are substantially similar to those under § 1983, the NYSHRL claims against Officer Cuer will also stand. Officer Cuer's motion for summary judgment is therefore denied in its entirety.

2. Superintendent Conway and Deputy Superintendent Dolce

Small alleges that Superintendent Conway and Deputy Superintendent Dolce violated § 1983 and NYSHRL by failing to report Small's complaints or take any action against Officer Cuer, and retaliated against her by moving her classroom. Superintendent Conway and Deputy Superintendent Dolce argue that they were not personally involved in the alleged harassment or retaliation, and therefore cannot be liable under § 1983 or NYSHRL. They also argue that New York Corrections law bars

any state law discrimination claims.

*a. Section 1983 and Personal Involvement*

"[A] defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because he held a high position of authority." Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996). Rather, the "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Farrell v. Burke, 449 F.3d 470, 484 (2d Cir.2006) (internal quotation marks omitted). Personal involvement may be demonstrated by evidence that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference . . . by failing to act on information indicating that unconstitutional acts were occurring.

Grullon v. City of New Haven, 720 F.3d 133, 139 (2d Cir. 2013) (citing Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995)).

In the context of sexual harassment, inaction may be actionable, and a failure to promptly and properly respond to complaints may constitute personal involvement under anti-discrimination laws. See Duch v. Jakubek, 588 F.3d 757, 766 (2d Cir. 2009). Such personal involvement is generally found when the defendant had notice of the alleged misconduct and failed to act on that knowledge. See Saxon v. Attica Med. Dep't, 468 F. Supp. 2d 480, 483 (W.D.N.Y. 2007) ("personal involvement can be established upon a showing that a supervisory official became aware of a violation and failed to remedy it"); Bass v. World Wrestling Fed'n Entm't, Inc., 129 F. Supp. 2d 491,

501 (E.D.N.Y. 2001) (denying motion to dismiss Title VII claims against an employer when harassers' conduct was "well-known" by senior management); Wise v. N.Y. City Police Dep't, 928 F. Supp. 355, 368-69 (S.D.N.Y. 1996) (finding that a supervisory officer could be personally involved in an alleged deprivation of rights when the plaintiff had proffered evidence that the officer knew of the harassment but failed to remedy it).

Here, Small has submitted evidence sufficient to allow a reasonable fact finder to determine that Superintendent Conway and Deputy Superintendent Dolce had notice of Officer Cuer's actions and acted with deliberate indifference or gross negligence in failing to remedy them. See, e.g., Johnson v. Newburgh Enlarged Sch. Dist., 239 F.3d 246, 255 (2d Cir. 2001) (holding that, where complaint alleged defendant-supervisors were aware teacher assaulted students on four occasions prior to his assault of the plaintiff, "a jury could find the [s]upervisors personally involved in the unconstitutional deprivation on the basis that they were . . . grossly negligent in supervising" the teacher). Small has also submitted evidence that Superintendent Conway and Deputy Superintendent Dolce's delay and failure to escalate her claims violated Attica's internal sexual harassment policies. Further, it is disputed whether moving Small's classroom was necessary for construction or done in retaliation.

Having found that material questions of fact remain as to Superintendent Conway and Deputy Superintendent Dolce's personal involvement in Small's claims, their motions for summary judgment must be denied as to the federal claims against them.

*a. NYSHRL and Correction Law § 24*

Superintendent Conway and Deputy Superintendent Dolce argue that the NYSHRL claims against them must be dismissed because they are barred from

consideration by N.Y. Correction Law § 24(1). Correction Law § 24 "shields employees of a state correctional facility from being called upon to personally answer a state law claim for damages based on activities that fall within the scope of the statute." Ierardi v. Sisco, 119 F.3d 183, 187 (2d Cir. 1997). Instead, any claim for damages due to a state correctional facility employee's action or inaction must be brought in New York's Court of Claims as a claim against the state. Id.[5]

The jurisdictional limitation of § 24 is broad, and "immunity is not necessarily unavailable simply because the challenged conduct is violative of regulations of the Department of Correctional Services, or otherwise beyond an officer's authority." Ierardi, 119 F.3d at 187. However, its application is limited to conduct occurring "within the scope of the employment and in the discharge of the [employee's] duties." N.Y. Correction Law § 24(1); Ierardi, 119 F.3d at 187. "[A]n employee will be considered within the scope of his employment so long as he is discharging his duties, 'no matter how irregularly, or with what disregard of instructions.'" Cepeda v. Coughlin, 128 A.D.2d 995, 996, 513 N.Y.S.2d 528, 530 (3d Dep't 1987) (quoting Riviello v. Waldron, 47 N.Y.2d 297, 302, 391 N.E.2d 1278 (N.Y. 1979) (internal quotation marks omitted)). On-the-job conduct of DOCCS employees has sometimes been found to be outside the scope of employment, but "such holdings generally have been limited to cases in which the conduct was prompted purely by personal reasons unrelated to the employer's interest, or indicated an intentional course of conduct contrary to institutional rules, training and common sense." Degrafinreid v. Ricks, 452 F. Supp. 2d 328, 334 (S.D.N.Y. 2006) (internal citations and punctuation omitted); see Ierardi, 119 F.3d at

[5] This Court notes that N.Y. Correction Law § 24 bars only those claims brought under state law, not federal claims brought under § 1983. Haywood v. Drown, 556 U.S. 729, 740, 129 S. Ct. 2108, 2117, 173 L. Ed. 2d 920 (2009).

188 (correction officer's alleged sexual harassment of co-worker while on duty was beyond scope of employment); Livingston v. Griffin, No. 9:04-CV-0607, 2007 WL 2437433, *2 (N.D.N.Y. Aug. 22, 2007) (defendants not immune from allegation that they committed a civil battery by intentionally and deliberately feeding plaintiff foods mixed with unknown drugs).

Small alleges that Superintendent Conway and Deputy Superintendent Dolce failed to respond to complaints and failed to take appropriate remedial action with respect to harassment by Officer Cuer, and retaliated against her by moving her classroom. As alleged, these incidents "occurred during the course of the parties' employment and arose out of defendants' relationship as plaintiff's supervisors." Gore v. Kuhlman, 217 A.D.2d 890, 630 N.Y.S.2d 141 (3d Dep't 1995) see Reynolds v. Barrett, 685 F.3d 193, 201 n. 5 (2d Cir. 2012) (affirming dismissal of state law discrimination claims as barred by Corrections Law § 24). A supervisor's failure to follow a sexual harassment policy "constitutes no more of a departure from the normal methods of performing the duties of employment than a correction officer's use of excessive force to quell an inmate disturbance, resulting in an assault." Gore, 217 A.D.2d at 891 (citing Cepeda, 128 A.D.2d at 997 (section 24 applied to alleged assault of inmates by correction officers because custody and control of inmates are part of the officers' duty)).

Because Small's allegations made in support of her NYSHRL claims describe Superintendent Conway and Deputy Superintendent Dolce's abuse or dereliction of their supervisory positions, her claims against them are barred from consideration in this Court by Corrections Law § 24. See Gore, 217 A.D.2d at 891 (disciplinary actions and

similar matters fell within the defendants' authority as plaintiff's supervisors). Accordingly, Superintendent Conway and Deputy Superintendent Dolce's motion for summary judgment is granted as to the state law claims.

## IV. CONCLUSION

Defendants have failed to establish that there are no material facts in dispute such that the claims against them should be dismissed. However, this Court finds that it does not have jurisdiction over Small's state law claims against Superintendent Conway and Deputy Superintendent Dolce. Therefore the state law claims against Superintendent Conway and Deputy Superintendent Dolce's are dismissed. Otherwise the motions for summary judgment are denied.

## V. ORDERS

IT HEREBY IS ORDERED that Defendant Carl Cuer's motion for summary judgment (Docket No. 84) is DENIED;

FURTHER, that Defendants James Conway Sandra Dolce's motion for summary judgment (Docket No. 87) is DENIED as the federal claims and GRANTED as to the state law claims.

SO ORDERED.

Dated: March 30, 2017
Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
United States District Judge