UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

PAMELA S. SMALL,

                 Plaintiff,

    v.

THE STATE OF NEW YORK, et al.,

                 Defendants.
_____

**AFFIRMATION OF
JENNIFER SHOEMAKER**

**Civ. No.: 1:12-cv-01236(WMS)**

    **JENNIFER SHOEMAKER**, an attorney at law, duly licensed to practice in the State of New York, hereby makes the following statements under the penalties of perjury:

    1.    I am a Partner with the firm of Underberg & Kessler LLP, attorneys for Plaintiff in the above-captioned matter, and as such, I am fully familiar with the facts and circumstances surrounding this matter.

    2.    I make this Affirmation in support of Plaintiff's Motion for Attorneys' Fees, Pre and Post Judgment Interest and Costs.

    3.    The Court should grant Plaintiff prejudgment interest on her back pay award.

    4.    The resolution of this matter has been often delayed through no fault of Plaintiff, and Defendants should not be able to financially benefit from those delays.

    5.    Plaintiff should also be awarded prejudgment interest on her compensatory damages award under Title VII.

    6.    Such an award is within the Court's discretion to make the plaintiff whole.

7.     Given the jury's award of back wages under the New York State Human Rights Law, Plaintiff urges the Court to use the applicable New York State interest rate when determining the amount of prejudgment interest to which Plaintiff is entitled.

8.     In addition, the prejudgment interest should be compounded annually.

9.     A spokesperson for DOCCS has indicated to the media that Defendants intend to appeal the jury's verdict.

10.    The appeals of the jury's verdict will be unsuccessful; the evidence presented at trial was overwhelmingly in Plaintiff's favor, as demonstrated by her victory on each and every claim in her lawsuit.

11.    The planned meritless appeal will only serve to further delay justice for Plaintiff.

12.    Such tactics should not be rewarded, and Plaintiff should be compensated with post-judgment interest for the delay she will experience before she sees any of the compensation justly awarded by the jury.

13.    Indeed, the Second Circuit has held that post-judgment interest is mandatory.

14.    Further, post-judgment interest should be applied to Plaintiff's entire final judgment, including awards of attorneys' fees, costs and the amount of prejudgment interest.

15.    Plaintiff is entitled to an award of attorneys' fees and costs under both Title VII and Section 1983 as the prevailing party.

16.    Again, the jury found in Plaintiff's favor on every one of her claims presented at trial.

17. There is no question that Plaintiff overwhelmingly prevailed at trial.

18. Plaintiff wasted no time in trying to enforce her federal and state rights after Defendants' illegal conduct.

19. She commenced her required administrative New York State Division of Human Rights Complaint in 2011 and filed her federal lawsuit in 2012.

20. I have represented Plaintiff from the very beginning, beginning during her NYSDHR proceedings.

21. The factual background of Plaintiff's claims are complicated; there is a lengthy timeline at issue with dozens of witnesses.

22. Paper discovery in this case involved thousands and thousands of pages.

23. Plaintiff deposed sixteen witnesses; while balancing the interests of efficiency with the need for thorough discovery, the list of sixteen individuals was culled down from a list of over twenty potential deponents and because Defendants refused to consent.

24. This case has suffered from numerous delays that are not due to anything Plaintiff did.

25. From the beginning of the case, there were delays in obtaining discovery from Defendants.

26. Defendants' initial disclosures were extremely tardy resulting in the necessary postponement of mediation.

27. In October 2014, and two years after the lawsuit was filed, mediation was finally scheduled, but defense counsel at the time, David Sleight, Esq. of the Attorney

General's office, came with no authority and stated only that Defendants were not prepared to mediate.

28.     Shortly thereafter, and two years after litigation began, Defendants determined that there was an unwaivable conflict of interest resulting from Mr. Sleight representing all Defendants, requiring further delays for new counsel for Defendants to get up to speed.

29.     In fact, the change in counsel led to an additional five months of delay, and the parties were unable to make any progress in discovery until March 2015.

30.     Plaintiff repeatedly attempted to schedule depositions, but was unable to get Defendants to agree to dates until April 2015.

31.     In March 2015, Defendants finally sent extremely tardy responses to Plaintiff's discovery requests.

32.     The parties had to engage in motion practice on several occasions, including for leave to depose more than ten witnesses due to the complexity of the factual background of this case.

33.     Defendants also filed for summary judgment on behalf of all of the individual defendants, necessitating a response to those motions.

34.     Plaintiff's counsel has been trial-ready on three separate occasions.

35.     On each of the first two occasions, the trial was postponed on the eve of trial through no fault of Plaintiff.

36.     Preparing for trial necessarily consisted of significant preparation, including but not limited to: reviewing all of the thousands of pages of documents; reviewing all of the numerous deposition transcripts; reviewing relevant case law; preparation of jury

instructions and voir dire questions; preparing in excess of 290 exhibits; preparing the direct testimony of over 10 witnesses as well as preparing for the cross-examination of defense witnesses; and drafting and responding to motions related to the trial.

37. On each postponement, Plaintiff's counsel had to essentially begin trial preparation all over again to ensure familiarity with the myriad of factual details in this case.

38. Plaintiff's mental health condition and disability also made litigating this case more time-consuming and complicated than it may have been.

39. Plaintiff's condition necessitated a lot of lengthy client contact and hand-holding through the seven-year process.

40. Throughout trial and throughout this entire litigation process, it has been clear that the evidence of Defendants' unlawful conduct is overwhelming.

41. Despite the overwhelming evidence, Defendants chose to fight Plaintiff every step of the way instead of making Plaintiff whole for what she suffered due to their conduct.

42. Given the foregoing, the fee amount requested is reasonable in light of the realities of litigating this case.

43. Litigating this case has certainly taken up significant attorney time and has limited counsel from accepting representation or working on other matters in which a hourly rate would be reliably paid.

44. Despite my belief in the strength of Plaintiff's claims, it was entirely possible that at the end of the lengthy litigation, I would recover none of the significant fees and costs put into this case by myself and many of my colleagues.

45.     Plaintiff certainly does not have the ability to cover the fees and costs of this matter, and due to her inability to pay, counsel had to take this matter on as a contingency fee matter.

46.     I believe that other attorneys may not have taken on representation in this matter given the complex nature of the claims, the risk associated with covering all of the fees and costs pending litigation, and Defendants' unwillingness to entertain reasonable settlement discussions.

47.     I have been the primary attorney on this matter since 2011, and I have over eighteen (18) years of relevant experience.  (For the Court's information, when I began working on this case, my name was Jennifer Mereau.)

48.     One of my main practice areas is labor and employment litigation, and my current hourly rate for all matters is $320.00 an hour.

49.     Working with me on this case since 2011 has been paralegal Janice Hance who has over twenty-eight (28) years of relevant litigation experience, and her current hourly rate for all matters is $175.00.

50.     Associate Attorney Alina Nadir, Esq. joined the team working on Plaintiff's case in 2014 due to the voluminous nature of the matter, and she has over eight (8) years of relevant experience, with a primary practice area of labor and employment litigation, and a current hourly billable rate of $260.00 an hour.

51.     The total lodestar figure of attorney's fees that Plaintiff incurred in this matter is $1,054,600.00.  A complete fee listing is attached hereto as Exhibit A.

52.     The lodestar figure was reached by considering the hours expended on this matter times each individual's hourly rate at the time a specific task was performed.

53.     As this matter has been pending for seven (7) years, the hourly rates have changed over time as reflected in the attached statement of fees.

54.     Throughout the litigation, there have been times when additional help or consultation was needed from other attorneys or paralegals, and the fees incurred on those instances are also included in the fee schedule.

55.     For the purposes of clarity, the following is a list of individuals who billed fees to this matter over the course of the litigation along with their position at the firm:

    i. Paul F. Keneally, Esq., Litigation Partner and Chair of the Labor and Employment Practice Group

    ii. Colin D. Ramsey, Esq., Litigation Partner

    iii. Jillian K. Farrar, Esq., Litigation Associate

    iv. Jessie Gregorio, Esq., Litigation Associate

    v. Jennifer Coleman, Paralegal

    vi. Carol Cross, Paralegal

    vii. Maria Soeffing, Paralegal

    viii. Jodi Smith-Schuler, Paralegal

    ix. Tracy Bansbach, Paralegal

56.     None of the work completed in this matter was taken on frivolously or needlessly.

57.     In all circumstances, counsel reasonably believed that an assignment or task to be completed was necessary.

58.     The complexity of the claims in this matter also necessitated the use of two expert witnesses, Dr. Kenneth W. Reagles and Dr. Norman J. Lesswing.

59. Dr. Reagles assessed the economic effect of Defendants' illegal acts on Plaintiff, and his Curriculum vitae is attached as Exhibit B.

60. Dr. Reagles has extensive experience in the field, and in fact, led an entire department at Syracuse University related to rehabilitation economics for over ten years.

61. He remains affiliated with Syracuse University to this day.

62. Dr. Reagles' retention was necessary to assist the jury in understanding the severe economic impact of Defendant's illegal acts, and the fees needed to obtain his assessment and testimony should be reimbursed by Defendants.

63. Dr. Lesswing assessed Ms. Small's psychological state given the events at issue in this lawsuit. His Curriculum Vitae is attached as Exhibit C.

64. Dr. Lesswing is well-respected in his field and has had a lengthy career of over forty years, and in fact, he testified that the State of New York has used him for similar testimony in the past.

65. His retention was necessary to establish Plaintiff's claims and the devastating impact of Defendants' illegal acts, and the fees needed to obtain his assessment and testimony should be reimbursed by Defendants.

66. The fees Plaintiff incurred as a result of retaining these two experts are included in Exhibit D to this Affirmation, which outlines the costs Plaintiff incurred throughout this lawsuit.

67. Also included in Exhibit D, are filing fees, service of process fees, travel-related fees, transcript fees, subpoena and witness fees.

68. Plaintiff had many travel-related costs in this matter as her attorneys needed to travel for necessary proceedings such as the numerous depositions, which took over two weeks to complete, and court appearances.

69. On some occasions, meals were also necessary as some of the proceedings, such as depositions, lasted full days.

70. In addition, Plaintiff's attorneys incurred hotel costs during trial; given the need to adequately prepare for trial each day and the necessity to be able to consult with Plaintiff after each day's proceedings, Plaintiff's trial team required lodging during trial.

71. In all respects, we sought to keep the cost of such necessities as reasonable as possible, including comparison shopping for a hotel during trial and negotiating the price with hotel management.

72. These costs were incurred only due to the nature and location of this particular case and are not costs incurred as part of routine office overhead.

73. The total figure of costs, not including legal research costs, that Plaintiff incurred in this matter is $74,416.21.

74. The fees and costs listed on the attached exhibits reflect costs and fees through the end of September 2018 as the trial concluded on September 27, 2018.

75. Attached as Exhibit E is a listing of the legal research fees incurred throughout this lawsuit.

76. All research was completed to ensure counsel could provide the most effective legal representation to Plaintiff as possible.

77. Plaintiff incurred a total of $26,032.51 in legal research costs.

78. Plaintiff reserves the right to supplement her fee request to include time spent preparing and defending this motion for fees, interest, and costs, as well as future fees and costs in defending the jury's award and any of Defendants' attempts to appeal all or part of the final judgment.

79. For the foregoing reasons, as well as those set forth in Plaintiff's Memorandum of Law, Plaintiff's motion should be granted in its entirety.

Dated:  October 25, 2018

/s/ Jennifer A. Shoemaker
_____
Jennifer A. Shoemaker