UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

**PAMELA S. SMALL**,

                                        Plaintiff,

        v.


**THE STATE OF NEW YORK,  et al**.,

                                        Defendants.

 _____




**PLAINTIFF'S MOTION FOR ATTORNEYS'
FEES, PRE- AND POST-JUDGMENT
INTEREST AND COSTS**


Civil Action No.: 12-CV-01236




UNDERBERG & KESSLER LLP
Jennifer A. Shoemaker, Esq.
Alina Nadir, Esq.
Attorneys for Plaintiff Pamela Small
300 Bausch & Lomb Place
Rochester, New York 14604
Telephone: (585) 258-2825

## PRELIMINARY STATEMENT

Plaintiff submits this Memorandum of Law in support of her Motion for Attorneys' Fees, Pre and Post Judgment Interest and Costs. For the reasons described in this Memorandum, as well as in the Affirmation of Jennifer A. Shoemaker, Esq., dated October 25, 2018 ("Shoemaker Affirmation"), Plaintiff's motion should be granted in its entirety.

### Plaintiff Is Entitled to Prejudgment and Post-Judgment Interest on Her Award

Plaintiff requests prejudgment interest on her back pay award. Plaintiff also requests post-judgment interest be awarded on her award determined by the length of time payment on her jury award is delayed.

Courts have discretion to award prejudgment interest on back pay awards under both Title VII and New York State Human Rights Law. "Prejudgment interest prevents the defendant employer from attempting to enjoy an interest-free loan for as long as it can delay paying out back wages and helps to ensure that the plaintiff is meaningfully made whole." *Matusick v. Erie Cty. Water Authority*, 774 F. Supp. 2d 514, 529 (W.D.N.Y. 2011) (internal citations omitted).

While whether to award prejudgment interest is within the discretion of the Court, "to the extent that the damages awarded to the plaintiff represent compensation for lost wages, it is ordinarily an abuse of discretion not to include pre-judgment interest." *Tuszynski v. Innovative Svcs., Inc.*, 2005 WL 221234, at *7 (W.D.N.Y. Jan. 29, 2005) (internal citations omitted). Courts may also use their discretion to award prejudgment interest on awards for pain and suffering and emotional distress under Title VII. *Lamberson v. Six West Retail Acquisition, Inc.*, 2002 WL 207016, at *1 (S.D.N.Y. Feb.

11, 2002); *see also Robinson v. Instructional Sys., Inc.*, 80 F. Supp. 2d 203, 207-208 (S.D.N.Y. 2000) (awarding prejudgment interest on mental anguish award "in order to meaningfully make plaintiff whole"); *Perdue v. City Univ. of New York*, 13 F. Supp. 2d 326, 342 (E.D.N.Y. 1998) (awarding prejudgment interest on Title VII award of compensatory damages for pain and suffering and mental anguish).

In this case, it is entirely appropriate to award prejudgment interest to Plaintiff's awards for pain, suffering and emotional distress. The psychological damage that Plaintiff suffered in this case was significant, as the jury clearly recognized, and Plaintiff should be made "meaningfully whole," especially when considering the severity of Defendants' proven illegal acts.

The interest rate to be applied to a calculation of prejudgment interest is similarly within the discretion of the Court. *Robinson*, 80 F. Supp. 2d at 208. In cases with both federal and state claims, although district courts often use the rate of interest provided in 28 U.S.C. § 1961, it is not compulsory. A court may also decide to use the interest rate identified in CPLR 5004.

Here, the jury issued a decision as to Plaintiff's front and back pay awards under the New York State Human Rights Law. The Court has previously indicated that it will take the jury's award as advisory when considering Plaintiff's front and back pay award under her Title VII claims. As the jury made its determination under Plaintiff's New York State claim, Plaintiff urges the Court to use the applicable New York State interest rate to determine the amount of prejudgment interest to which she is entitled.

As more fully described in the Shoemaker Affirmation, this case has suffered numerous delays due to events beyond Plaintiff's control. (Shoemaker Affirmation at ¶¶

24-35).   Applying the federal rate of interest allows Defendants to reap a financial win from delays that Defendants themselves caused. In addition, as the Court is aware and as the jury recognized, the evidence supporting the jury's verdict is overwhelming. Despite having knowledge of all of that evidence from the onset of litigation, Defendants instead chose to fight Plaintiff at every step instead of resolving this and making Plaintiff whole for what she suffered due to Defendants' illegal conduct.   (Shoemaker Affirmation at ¶¶ 40-41).   This purposeful delay in justice also militates in favor of awarding Plaintiff the New York State interest rate to determine prejudgment interest.

As is the practice within the Second Circuit, whatever rate is ultimately applied to Plaintiff's judgment, prejudgment interest should be calculated as though it had been compounded annually.  *Becerril v. East Bronx NAACP Child Develop. Ctr.*, 2009 WL 2611950, at *5 (S.D.N.Y. Aug. 18, 2009) (citing *Saulpaugh v. Monroe Community Hosp.*, 4 F.2d 134, 145 (2d Cir. 1993) (an award of back pay can only make a plaintiff whole if the interest is compounded).

Post-judgment interest is mandatory on awards in civil cases from the date judgment is entered.   28 U.S.C. § 1961.   Post-judgment interest is "designed to compensate the plaintiff for the delay it suffers from the time damages are reduced to an enforceable judgment to the time the defendant pays the judgment."   *Andrulonis v. U.S.*, 26 F.3d 1224, 1230 (2d Cir. 1994).   Post-judgment interest should be accrued on the entire judgment in Plaintiff's favor, including the award of attorney's fees, costs, and the amount of pre-judgment interest.   *See Zakre v. Norddeutsche Landesbank Girozentrale*, 2008 WL 2557420, at *2 (S.D.N.Y. June 26, 2008).

Plaintiff is Entitled to Her Attorneys' Fees

Under both Title VII and Section 1983, both claims on which Plaintiff prevailed in this matter, a court is authorized to award attorneys' fees and costs to the prevailing party. A jury found in favor of Plaintiff on each and every one of her claims in this lawsuit, and as such, Plaintiff is entitled to fees and costs as the prevailing party.

Plaintiff's case was litigated by attorneys Jennifer Shoemaker, Esq. and Alina Nadir, Esq.  Ms. Shoemaker worked on Plaintiff's case from its inception in 2012 until the present.  Co-counsel Ms. Nadir joined the case in 2014 until the present.  Ms. Shoemaker is a partner at Underberg & Kessler LLP with over eighteen (18) years of litigation experience.  One of Ms. Shoemaker's primary areas of practice is employment law.  Ms. Nadir is an associate at Underberg & Kessler LLP with over eight (8) years of litigation experience.  Her primary area of practice is employment law.   Counsel's billing rates have changed over the many years this case has been pending.  At present, Ms. Shoemaker's rate is $320 and Ms. Nadir's rate is $260.  (Shoemaker Affirmation at ¶¶ 43, 44, 46).

Paralegal Janice Hance was instrumental in supporting the litigation of Plaintiff's claims.  Ms. Hance has over twenty-eight (28) years of experience as a litigation paralegal and has worked on Plaintiff's case from its onset with Ms. Shoemaker.  Her current hourly rate is $175.  (Shoemaker Affirmation at ¶ 45).

The hourly rates applicable to Plaintiff's legal fees are a reasonable rate for the Western District of New York.  WDNY courts have found similar rates to be acceptable when making fee awards under relevant statutes.  *See Murray v. Coleman*, 232 F. Supp. 3d 311, 317 (W.D.N.Y. 2017) (finding in-court time at $300 per hour and out-of-court time

at $275 per hour reasonable in Section 1983 action); *Davis v. Shah*, 2017 WL 2684100 (W.D.N.Y. 2017) (approving hourly rates from $375 to $260 for attorneys); *Dunda v. Aetna Life Ins. Co.*, 2016 WL 4831962, at *3 (W.D.N.Y. 2016) (hourly rate of $320 per hour reasonable in an ERISA action); *Davis v. Eastman Kodak Co.*, 758 F. Supp. 2d 190 (W.D.N.Y. 2010) (approving $350 hourly rate for attorneys with 11-20 years of experience and $300 hourly rate for 6-10 years of experience in Title VII matter).

Once an hourly rate has been established, the Court must determine a reasonable fee for the legal services.  "The starting point for the determination of a reasonable fee is the calculation of the lodestar amount," and there is a "strong presumption that the lodestar figure represents a reasonable fee."  *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999) (internal citations omitted).

Recently, the Western District has considered the following factors when determining a reasonable fee, including the following:

> 1) the time and labor required; 2) the novelty and difficulty of the questions; 3) the level of skill required to perform the legal service properly; 4) the preclusion of employment by the attorney due to acceptance of the case; 5) the attorney's customary hourly rate; 6) whether the fee is fixed or contingent; 7) the time limitations imposed by the client or the circumstances; 8) the amount involved in the case and the results obtained; 9) the experience, reputation, and ability of the attorneys; 10) the 'undesirability' of the case; 11) the nature and lengthy of the professional relationship with the client; and 12) awards in similar cases.

*Costa v. Sears Home Improvement Products,* 212 F. Supp. 3d 412 (W.D.N.Y. 2016) (internal citations omitted).

Plaintiff's lawsuit has been pending since 2012 with the preceding administrative matter commenced in 2011, and the factual background of her claims is complicated and

very detailed.  Plaintiff's attorneys began representing Ms. Small in 2011 soon after she was forced to leave work due to Defendants' illegal actions.  Notably, Plaintiff is an individual, and she had to fight this lawsuit for nearly a decade against the State of New York.  The matter has been repeatedly delayed due to circumstances beyond Plaintiff's control, including the purported discovery of an unwaivable conflict after the matter had already been pending for two years.  (Shoemaker Affirmation, generally).

Litigating this lawsuit has been complex and time-consuming.  This lawsuit has been pending for seven (7) years, and Plaintiff had to prove her case on multiple causes of action against multiple defendants.  Discovery in this matter included thousands and thousands of pages of documents and over fifteen (15) depositions.  Her attorneys spent over two full weeks just conducting necessary depositions.  The parties had to engage in motion practice on several occasions, including a motion to dismiss and summary judgment motions.  The parties then had to prepare for trial three (3) times, the first two trials being called off on very short notice.  On each occasion, counsel for Plaintiff had to engage in lengthy trial preparation and refamiliarize themselves with the thousands of pages of documents and testimony in order to be adequately prepared to represent Plaintiff.  Plaintiff also had to incur fees unnecessarily, such as her recent motion in limine regarding Defendants' psychological expert due to their failure to adhere to the Court's previous Order.  (Shoemaker Affirmation at ¶¶  19, 21-39, 68).

Litigating this matter has certainly precluded Plaintiff's attorneys from accepting representation in other matters in which a client would pay a reliable hourly rate, and Plaintiff's counsel took on Plaintiff's case not knowing whether at the end of this lengthy battle, counsel would see any attorneys' fees.  Plaintiff certainly does not have the ability

to pay legal fees herself.  Many others would not take on this case given the high level of risk involved with a contingency fee structure, especially given Defendants' choice to fight Plaintiff every step of the way instead of acknowledging that their illegal acts harmed Plaintiff.  Plaintiff repeatedly tried to discuss realistic settlement numbers, but was all but rebuffed by Defendants.  (Shoemaker Affirmation at ¶¶ 41, 43-46).

It is indisputable that the jury award in this case is significant and that Plaintiff's counsel obtained a substantial award on Plaintiff's behalf.  The fees sought by Plaintiff's counsel represents only a fraction of Plaintiff's total award from the jury.  (Shoemaker Affirmation, Exhibit A).  In similar cases, significant fee awards that were close to the amount of judgment, or even surpassed the amount of judgment, were found to be reasonable.  *See Mugavero v. Arms Acres, Inc.*, 2010 WL 451045 (S.D.N.Y. 2010) (judgment with interest of $789,611 and fees of $557,791); *Grant v. Bethlehem Steel Corp.*, 973 F.2d 96 (2d Cir. 1992) (upholding fee award of $512,590 where settlement amount was $60,000).

In some situations, counsel and staff working on this matter used "block-billing" to fully capture time expended on a given day with multiple tasks included in the description. Such block-billing is "not prohibited as along as the Court can determine the reasonableness of the work performed."  *Rodriguez v. McLoughlin,* 84 F. Supp. 2d 417, 425 (S.D.N.Y. 1999).  "It is not necessary to know the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney," *United States Football League, v. Nat'l Football League*, 704. F. Supp. 474, 477 (1989), as Courts must look at the "big picture."  *Burr v. Sobol*, 748 F. Supp. 97, 100 (S.D.N.Y. 1990).  In addition, general descriptions or work summaries without a detailed

8

listing of tasks, such as "case preparation" can be "sufficiently concrete, when viewed in context, to permit the court to make a judgment about the reasonableness of the total hours claimed." *Mugavero v. Arms Acres, Inc.*, 2010 WL 451045, at *7 (S.D.N.Y. 2010) (internal citations omitted). "The court is not required to assess each entry in isolation; rather, it may use its knowledge of the case and the demands that the issues posed by the case placed on the attorneys to judge whether counsel were . . . performing with less than reasonable efficiency." *Id.*

A thorough consideration of all of the factors described above certainly weighs in favor of Plaintiff's counsel receiving the full lodestar amount legal fees requested.

<u>Plaintiff's Expert Fees Should Be Reimbursed</u>

42 USCA § 2000e-5 expressly provides that a prevailing party is entitled not only to attorneys' fees, but expert fees. *See U.S. v. City of New York*, 2013 WL 5542459, at *13 (E.D.N.Y. 2013) ("An award of fees under Title VII explicitly includes award of expert fees.") The complexity of Plaintiff's economic damages as well as the severity of her emotional damages necessitated the use of experts. No layperson could have sufficiently described either the economic effects of Defendants' actions nor the devastating effect of Defendants' conduct on Plaintiff's psychological wellbeing. Experts were necessary to explain these issues to the jury.

As fully described in the Shoemaker Affirmation, both experts retained by Plaintiff are well-respected in their fields. In fact, Dr. Lesswing is often called by the State of New York as a psychological expert. Each has had a lengthy career in their fields. Dr. Reagles led an entire department at Syracuse University in his field for over ten (10) years. The assessment and testimony of each was integral to Plaintiff's case and a thorough

presentation of her damages, both economic and psychological.  (Shoemaker Affirmation, Exhibits B and C).

<u>Plaintiff's Costs Were Reasonably Incurred and Should be Reimbursed</u>

Plaintiff incurred numerous costs associated with prosecuting her case.  The expenditures for which Plaintiff seeks reimbursement are "routinely recoverable," including "costs for legal research, photocopies, overnight mail delivery, court reporters, transcripts, process servers, court imposed filing fees, expert fees and travel-related expenses."  *Olsen v. County of Nassau*, 2010 WL 376642, at *8 (E.D.N.Y. 2010) (collecting cases regarding the reimbursable nature of litigation-related costs).

Plaintiff's travel-related costs were incurred due to the need for her attorneys to travel for necessary proceedings such as the numerous depositions conducted and court appearances.  On some of these occasions, meals were necessary as some proceedings, such as the depositions, lasted full days.  In addition, during trial, Plaintiff's attorneys incurred hotel costs.  Given the need to adequately prepare for trial each day and the need to be able to consult with Plaintiff after proceedings concluded for the day, Plaintiff's trial team required lodging during trial.  Of course, this also necessitated meal purchases.

In all respects, Plaintiff's attorneys sought to keep the costs of these necessities as reasonable as possible, including comparison shopping for a hotel during trial and negotiating the price with hotel management.  These costs are not part of routine office overhead; these costs were incurred only due to the nature of this particular case.  A detailed listing of costs are contained within Exhibit D to the Shoemaker Affirmation.

Plaintiff also incurred legal research fees.  Any such research was completed to ensure counsel could provide the most effective legal representation as possible.   A listing of legal research fees is contained within Exhibit E to the Shoemaker Affirmation.

## **CONCLUSION**

Plaintiff reserves the right to supplement her fee request to include time spent preparing and defending this motion for fees, interest, and costs, as well as future fees and costs in defending the jury's award and any of Defendants' attempts to appeal all or part of the final judgment.

For the foregoing reasons, as well as those contained within the Shoemaker Affirmation, Plaintiff's Motion for Attorneys' Fees, Pre and Post Judgment Interest and Costs should be granted in its entirety.

Dated: October 25, 2018
          Rochester, New York

**UNDERBERG & KESSLER LLP**

*s/Jennifer A. Shoemaker*
Jennifer A. Shoemaker, Esq., and
Alina Nadir, Esq., of Counsel
Attorneys for Plaintiff Pamela S. Small
300 Bausch & Lomb Place
Rochester, New York 14604
Telephone: (585) 258-2800
jshoemaker@underbergkessler.com
anadir@underbergkessler.com