UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

PAMELA S. SMALL,

                    Plaintiff,

                                                    **DECISION AND ORDER**
          v.                                        12-CV-1236S

NEW YORK STATE DEPARTMENT OF
CORRECTIONS AND COMMUNITY SUPERVISION,
CARL CUER, JAMES CONWAY, and SANDRA DOLCE,

                    Defendants.

## I. INTRODUCTION

        After a 12-day trial, a federal jury determined that Defendants subjected Plaintiff

Pamela S. Small to discrimination and a hostile work environment and unlawfully

retaliated against her while she was employed as a civilian teacher at the Attica

Correctional Facility ("Attica").   The jury awarded Small $4.8 million in general

compensatory damages; $740,000 in back pay; $3.6 million in front pay; and $50,000 in

punitive damages; for a total award of $9.19 million.[1]

        Presently before this Court are several post-trial motions.   First, Defendants New

York State Department of Corrections and Community Supervision ("DOCCS"), James

Conway, and Sandra Dolce move for judgment as a matter of law under Rule 50 (b) of

the Federal Rules of Civil Procedure, or for a new trial under Rule 59 (a), and for alteration

or amendment of the verdict under Rule 59 (e) or for relief from judgment under Rule 60.

---

[1] Of this amount, $2,170,000 was technically an advisory verdict that this Court adopted post-trial.  (See
Docket No. 199.)

(Docket No. 206.)  Second, Defendant Carl Cuer moves for a new trial or remittitur under Rule 59 (a) and for alteration or amendment of the verdict under Rule 59 (e).  (Docket No. 204.)  Finally, Small moves for attorneys' fees, interest, and costs.  (Docket No. 202.)

For the reasons stated below, each of the motions is granted in part and denied in part.

## II. BACKGROUND

Despite challenging the sufficiency of the evidence in seeking to overturn the jury's verdict, Defendants have inexplicably neither obtained nor submitted the trial transcript in support of their post-trial motions.  Cf. Norton v. Sam's Club, 145 F.3d 114, 118 (2d Cir. 1998) ("A party seeking to overturn a verdict based on the sufficiency of the evidence bears a very heavy burden.").  The absence of trial transcripts precludes a factual recitation drawn directly from the trial evidence.  Consequently, to provide background and context for the post-trial motions, this Court draws from those undisputed facts set forth in its summary judgment decision that were proven at trial.  See Small v. New York, 12-CV-1236S, 2017 WL 1176032 (W.D.N.Y. Mar. 30, 2017).  The trial evidence, of course, was much more complete, but the recitation herein suffices to resolve the pending motions.

Small worked as a teacher at Attica from 2005 to 2012.  She was a civilian employee and reported directly to her academic supervisors, who in turn reported to Defendant Dolce, who was the Deputy Superintendent of Program Services and oversaw the academic, recreational, and vocational programs at Attica.  Dolce reported to

Defendant Conway, who was the Superintendent of Attica and responsible for oversight of the entire prison.

Defendant Cuer is a corrections officer at Attica. Between 2005 and 2010, Cuer and Small both worked in Attica's academic building, a three-story structure with two corrections officers posted on the first floor, and one officer posted on each of the second and third floors. Cuer served as the first-floor officer in the academic building, a position known as the "Hall Captain." The Hall Captain is responsible for ensuring the safety of the civilian academic employees (like Small) working in the academic building.

While Defendant Cuer was serving as Hall Captain, he and Small became friends. They discussed their shared Christian faith; Cuer worked on Small's car and assisted her with yardwork at her home. But beginning in December 2009, Cuer began making alarming comments to Small. Cuer told Small that he had been speaking with God, that God had informed him that his wife would soon die, and that God had chosen Small to be his new wife. Cuer also began sending Small frequent emails, text messages, and letters, insisting that God wanted them to be together. Small felt threatened and upset by Cuer's communications, particularly because Cuer was adamant that Small was breaching her Christian faith by refusing to be with him.

Defendant Cuer delivered some of his messages to Small at Attica, including by writing "I love you" on the desk calendar in Small's classroom and leaving her a note offering to apply lotion to her "hard to reach spots," which Small took to be a sexual advance. Cuer told a co-worker about his plans to marry Small, as well as his belief that God would kill his wife. Other officers overheard Cuer discussing plans to buy a gun,

specifically one that could be easily concealed.

Small never reciprocated Defendant Cuer's romantic advances. She initially tried to discourage Cuer while remaining friendly with him, but Cuer's behavior became increasingly intense and threatening. In March 2010, Small wrote Cuer a letter directing him to cease all contact and communication with her. She also verbally complained to Defendant Conway that Cuer was harassing her and wrote to Cuer's supervisor, Sergeant Erhardt. Small also reported Cuer's advances to her direct supervisor, who reported the issue to Defendant Dolce.

Despite these reports, the contact did not stop. Instead, Defendant Cuer continued to engage with Small in ways that she found harassing and threatening. For example, in June 2010, Small found a note on her car in the Attica parking lot that included a drawing of eyes, which Small interpreted as a message that Cuer was watching her, as well as a drawing that meant "I love you."

Two months later, Defendant Cuer sent Small a number of text messages in the early morning hours that Small believed he sent while sitting outside her house. Cuer accused Small of having a man inside her home and demanded that she come out to speak with him.

Several months after that, in October 2010, Defendant Cuer told Small in an email that God told him that Small was pregnant but did not know who the father was, and that God referred to Small by the name of a woman in the Bible who was struck down after failing to obey God.

The next month, Small sought and obtained an order of protection against

Defendant Cuer. While the order of protection was in place, Attica officials allowed Cuer to come and go from the prison with no restrictions but told Small to restrict her movement, use side doors, and have supervision when moving about the facility. Cuer was later arrested for violating the order of protection.

Throughout this period, Small and her direct supervisors made several verbal reports to Defendants Conway and Dolce. Between March and August 2010, Small and others lodged verbal complaints, but neither Conway nor Dolce took any meaningful action to investigate or remedy the situation or forward Small's complaints for a formal inquiry. This lack of response was exactly what Small was afraid of, since she knew that Defendant Cuer had personal relationships with many Attica employees, including Conway. Conway and Dolce failed to act on Small's complaints until they forwarded them to DOCCS's Office of Diversity Management in August 2010, after which no further action was taken. Small was never contacted about her complaints, and Cuer was never disciplined in any way.

Small's complaints about Defendant Cuer resulted in the very retaliation that she feared. In June 2010, Defendant Dolce changed Small's classroom assignment from a classroom on the third floor of the academic building, which was off-limits to all personnel at night and on weekends, to the second floor, which was not so restricted and therefore subject to significant property damage. She also instructed Small to limit her movement around the facility and to seek escorts. In addition, Cuer and other corrections officers failed to deliver important documents to Small's staff mailbox and shunned her, and Cuer falsely accused Small in an official complaint of having an inappropriate relationship with

an inmate, which DOCCS investigators later found to be without merit.  All of this occurred after Small complained about Cuer.

The intolerable conditions at Attica deteriorated Small's health to the point where she could no longer work due to physical and psychological impairments.  After Small exhausted her sick leave, DOCCS terminated her employment.  Her last day was January 29, 2011.

### III.  DISCUSSION

Four claims went to trial.  First, Small alleged that DOCCS subjected her to discrimination and a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq.  Second, Small alleged that DOCCS retaliated against her in violation of Title VII.  Third, Small alleged that Defendants Cuer, Dolce, and Conway deprived her of her federally protected right to be free from a hostile work environment under 42 U.S.C. § 1983.  Fourth, Small alleged that Cuer aided and abetted unlawful discrimination and hostile work environment in violation of New York Rights Law § 296 (6).

The jury returned a verdict in Small's favor on each claim.  For the first and second claims, the jury awarded $2.4 million in compensatory damages, and this Court accepted the jury's advisory verdict in awarding $370,000 in back pay and $1.8 million in front pay, for a total award against DOCCS of $4.57 million.  (Docket Nos. 197, 199, 200.)  For the third claim, the jury awarded $1 million in compensatory damages and $50,000 in punitive damages against Defendant Cuer; $480,000 in compensatory damages against Defendant Dolce; and $240,000 in compensatory damages against Defendant Conway.

6

(Docket Nos. 197, 200.)  For the fourth claim, the jury awarded $680,000 in compensatory damages, $370,000 in back pay, and $1.8 million in front pay.  (Docket Nos. 197, 200.)

Defendants DOCCS, Conway, and Dolce now move for judgment as a matter of law under Rule 50 (b) of the Federal Rules of Civil Procedure or, for a new trial under Rule 59 (a), and for alteration or amendment of the verdict under Rule 59 (e) or for relief from judgment under Rule 60.  (Docket No. 206.)  Defendant Cuer moves for a new trial or remittitur under Rule 59 (a) and for alteration or amendment of the verdict under Rule 59 (e).  (Docket No. 204.)  Small moves for attorneys' fees, interest, and costs.  (Docket No. 202.)  These motions are resolved below.

## A. Defendants DOCCS, Dolce, and Conway's Post-Trial Motion

Defendants DOCCS, Dolce, and Conway move for various forms of relief.  First, DOCCS argues that it is entitled to judgment as a matter of law under Rule 50, or a new trial under Rule 59, on the basis that the evidence presented at trial was insufficient to support its liability under Title VII.  DOCCS also argues that the judgment must be altered or amended under Rule 59 (e) or Rule 60 (b)(6) because compensatory damages for Title VII violations are statutorily capped at $300,000.[2]  Second, Defendants Dolce and Conway argue that they are entitled to judgment as a matter of law under Rule 50 or relief from judgment under Rule 60 because the evidence presented at trial was insufficient to support supervisory liability under 42 U.S.C. § 1983, or alternatively, because they are

---

[2] DOCCS does not otherwise challenge or seek remittitur of the damages award, including the award of $370,000 in back pay and $1.8 million in front pay.  (See Docket Nos. 199, 200.)

entitled to qualified immunity as a matter of law.[3]  But for agreeing that the statutory cap on Title VII damages applies, Small opposes the motion.

### 1. DOCCS has not demonstrated that it is entitled to judgment as a matter of law or a new trial on the basis that the trial evidence was insufficient to support its liability under Title VII.

DOCCS moves for judgment as a matter of law or for a new trial on the grounds that the trial evidence was insufficient to support its liability under Title VII.

A party that moves for judgment as a matter of law at trial may renew that motion and again seek judgment as a matter of law after the jury has returned its verdict.  See Fed. R. Civ. P. 50 (b)(3).  In the first instance, the movant's burden is a heavy one: judgment as a matter of law can be awarded only when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue."  Fed. R. Civ. P. 50 (a)(1).

That burden becomes even heavier—"particularly heavy"—when, as here, "the jury has deliberated in the case and actually returned its verdict" in favor of the non-moving party.  Cross v. N.Y.C. Transit Auth., 417 F.3d 241, 248 (2d Cir. 2005).  "In such circumstances, a court may set aside the verdict only 'if there exists such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or the evidence in favor of the movant is so overwhelming that reasonable and fair minded persons could not arrive at a verdict

---

[3] Like DOCCS, Defendant Dolce and Conway do not seek remittitur of the jury's damages award against them.

against it.'" Cash v. County of Erie, 654 F.3d 324, 333 (2d Cir. 2011) (quoting Kinneary v. City of New York, 601 F.3d 151, 155 (2d Cir. 2010)); see also Cruz v. Local Union No. Three of the Int'l Bhd. of Elec. Workers, 34 F.3d 1148, 1154-55 (2d Cir. 1994) (noting that judgment as a matter of law must be denied unless "there can be but one conclusion as to the verdict that reasonable [jurors] could have reached.'"). "In short, a Rule 50 (b) motion may be granted only if the court, viewing the evidence in the light most favorable to the non-movant, concludes that a reasonable juror would have been *compelled* to accept the view of the moving party.'" Cash, 654 F.3d at 333 (quoting Zellner v. Summerlin, 494 F.3d 344, 371 (2d Cir. 2007) (emphasis in Zellner)).

In considering a Rule 50 (b) motion, "[t]he court must consider the evidence in the light most favorable to the non-movant and 'give that party the benefit of all reasonable inferences that the jury might have drawn in his favor from the evidence' bearing in mind that a jury is free to believe or disbelieve any part of a witness' testimony." Jones v. Town of E. Haven, 691 F.3d 72, 80 (2d Cir. 2012) (quoting Zellner, 494 F.3d at 371). In doing so, the court may "disregard all evidence favorable to the moving party that the jury is not required to believe." Zellner, 494 F.3d at 371 (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 135, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000)). It may not, however, "assess the weight of conflicting evidence, pass on the credibility of the witnesses, or substitute its judgment for that of the jury." Tolbert v. Queens Coll., 242 F.3d 58, 70 (2d Cir. 2001) (citations omitted).

The standard under Rule 59, which permits a court to "grant a new trial on all or some of the issues," see Fed. R. Civ. P. 59 (a)(1), is less stringent. See Manley v.

AmBase Corp., 337 F.3d 237, 244 (2d Cir. 2003). "In contrast to a judgment as a matter of law, a new trial may be granted under Rule 59 even if there is substantial evidence to support the jury's verdict." Mono v. Peter Pan Bus Lines, Inc., 13 F. Supp. 2d 471, 475 (S.D.N.Y. 1998) (citing Song v. Ives Labs., Inc., 957 F.2d 1041, 1047 (2d Cir. 1992)). And the court need not weigh the evidence in a light most favorable to the non-moving party. Song, 957 F.2d at 1047. Nevertheless, "[a] motion for a new trial ordinarily should not be granted unless the trial court is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice." Townsend v. Benjamin Enters., Inc., 679 F.3d 41, 51 (2d Cir. 2012) (internal citations and quotation marks omitted) (quoting Medforms, Inc. v. Healthcare Mgmt. Sols., Inc., 290 F.3d 98, 106 (2d Cir. 2002)).

DOCCS argues that it is entitled to judgment as a matter of law or a new trial because Small failed to establish that the treatment she experienced at Attica rose to the level required for liability under Title VII.

A plaintiff claiming that she was the victim of a hostile work environment must generally produce evidence from which a reasonable trier of fact could conclude "(1) that the workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of [her] work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer." Mack v. Otis Elevator Co., 326 F.3d 116, 122 (2d Cir. 2003) (quoting Richardson v. New York State Dep't of Corr. Serv., 180 F.3d 426, 443 (2d Cir. 1999)). "The sufficiency of a hostile work environment claim is subject to both subjective and objective measurement: the plaintiff must demonstrate that she personally considered the environment hostile,

and that the environment rose to some objective level of hostility." <u>Leibovitz v. New York</u> <u>City Transit Auth.</u>, 252 F.3d 179, 188 (2d Cir. 2001).

With no citation to trial evidence, and construing the evidence in the exact opposite manner required under Rule 50 (<u>i.e.</u>, in its own favor), DOCCS maintains that Small's experience was merely the result of "a breakdown in a personal relationship [with Defendant Cuer] that was occurring outside of the workplace and was spiraling beyond [Small's] control," and that "the occasional looks and creepy comments" from Cuer at Attica were not sufficiently pervasive or severe enough to establish an actionable hostile work environment. (Memorandum of Law, Docket No. 206-1, pp. 8-9.) This is a gross minimization of the evidence presented at trial.

For the better part of 12 days, the jury heard unrebutted evidence—Defendant Cuer did not testify—that Cuer relentlessly pursued Small, mercilessly preying on her religious beliefs in an effort to coerce and convince Small that God intended her to be his new wife. Cuer told Small that his wife would soon die and suggested that Small too could die if she did not replace her. Cuer was as persistent as he was peculiar: he left Small notes and letters at work; he stalked her classroom; he turned their colleagues against her; he went to her home; he filed false accusations against her; he accused her of being with other men. All of this conduct was unwelcomed. And Cuer was relentless: his campaign continued long after Small made clear that she wished for it to stop, long after it took its physical and psychological toll,[4] and well after Small reported his conduct

---

[4] Small's physical ailments included loss of hair, loss of appetite, weight gain, lethargy, nausea, and incessant coughing. Her psychological conditions included post-traumatic stress disorder, major depressive disorder, sleep phobia, agoraphobia, and anxiety.

to Defendants Dolce and Conway, who failed to act.  Not even the Order of Protection that Small obtained could stop it.

Without question, the evidence presented at trial was sufficient for the jury to determine that Small established the existence of a hostile work environment that persisted without remedy.  This is true whether considering all of the evidence in the light most favorable to Small and crediting all reasonable inferences the jury could have drawn in her favor (for judgment as a matter of law), or not (for a new trial).  See Jones, 691 F.3d at 80.  And as to its specific request for judgment as a matter of law, DOCCS has made no effort to show, let alone established, that there is a complete lack of evidence supporting the jury's verdict or that the evidence in its favor was so overwhelming that no reasonable juror could find in Small's favor.  See Cash, 654 F.3d at 333.  DOCCS has therefore failed to carry its burden of demonstrating that it is entitled to judgment as a matter of law or a new trial.  This aspect of DOCCS's motion is therefore denied.

## 2. The judgment must be amended to reflect the statutory cap on Title VII compensatory damages.

DOCCS maintains that the judgment must be amended to reduce the jury's $2.4 million compensatory damages award against DOCCS to $300,000, which is the statutory cap.  Small agrees.  Indeed, Title VII compensatory damages are capped at $300,000 against employers, like DOCCS, that have more than 500 employees.  See 42 U.S.C. § 1981a (b)(3)(D); Turley v. ISG Lackawanna, Inc., 774 F.3d 140, 166 n. 25 (2d Cir. 2014) ("Title VII caps total recovery, including punitive damages, at $300,000.") (citing 42 U.S.C. § 1981a (b)(3)).  The judgment will therefore be amended to reduce the jury's $2.4 million

12

compensatory damages award against DOCCS to $300,000. This aspect of DOCCS's motion is granted.

### 3. Defendants Dolce and Conway have not demonstrated that the trial evidence was insufficient to support their liability under 42 U.S.C. § 1983.

Defendants Dolce and Conway argue that they are entitled to judgment as a matter of law or relief from the final judgment because the trial evidence was insufficient for a reasonable jury to find that they were involved in the deprivation of Small's right to be free from a hostile work environment, as required for liability under 42 U.S.C. § 1983.

Civil liability is imposed under 42 U.S.C. § 1983 only upon persons who, acting under color of state law, deprive an individual of rights, privileges, or immunities secured by the Constitution and laws. See 42 U.S.C. § 1983. To succeed on a § 1983 claim, a plaintiff must establish that the challenged conduct "(1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." Whalen v. County of Fulton, 126 F.3d 400, 405 (2d Cir. 1997); see also Hubbard v. J.C. Penney Dep't Store, 05-CV-6042, 2005 WL 1490304, at *1 (W.D.N.Y. June 14, 2005).

Personal involvement in the deprivation of a federal constitutional right is the *sine qua non* of liability under § 1983. See Haygood v. City of New York, 64 F. Supp. 2d 275, 280 (S.D.N.Y. 1999). It is well settled in this circuit that personal involvement by defendants in cases alleging constitutional deprivations is a prerequisite to an award of damages under § 1983. See McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir. 1977); Richardson v. Coughlin, 101 F. Supp. 2d 127, 129 (W.D.N.Y. 2000); Pritchett v. Artuz, No. 99 Civ. 3957 (SAS), 2000 WL 4157, at *5 (S.D.N.Y. Jan. 3, 2000).

13

The Second Circuit construes personal involvement in this context to mean "direct participation, or failure to remedy the alleged wrong after learning of it, or creation of a policy or custom under which unconstitutional practices occurred, or gross negligence in managing subordinates." Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996); see also Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994). Personal involvement need not be active participation. It can be found "when an official has actual or constructive notice of unconstitutional practices and demonstrates gross negligence or deliberate indifference by failing to act." See Meriwether v. Coughlin, 879 F.2d 1037, 1048 (2d Cir. 1989). Thus, personal involvement can be established by showing that

> (1) the defendant participated directly in the alleged constitutional violation; (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong; (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom; (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or (5) the defendant exhibited deliberate indifference to others' rights by failing to act on information indicating that constitutional acts were occurring.

Liner v. Goord, 582 F. Supp. 2d 431, 433 (W.D.N.Y. 2008) (citing Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995)); Hayut v. State Univ. of New York, 352 F.3d 733, 753 (2d Cir. 2003).

Defendants Dolce and Conway first argue that their failure to act on Small's complaints did not proximately cause her any harm because when they finally did forward her complaints to the Office of Diversity Management, that office took no action. This argument, which narrowly focuses on only the failure to forward Small's complaints,

14

entirely ignores the unrebutted evidence that despite having direct and specific knowledge about the discriminatory conditions of Small's employment, neither Dolce nor Conway intervened or took any action to stop it. They did not investigate her complaints. They did not keep Defendant Cuer away from her. They did not counsel Cuer. They did nothing whatsoever to meaningfully address the situation, other than to cause Small to change classrooms and limit her movements, a misguided reaction that only compounded the already hostile work environment. Thus, Dolce and Conway's failure to timely report Small's claims to the Office of Diversity Management is just one of many failures on their part, each of which permitted the intolerable work conditions to persist unaddressed. Sufficient evidence—indeed, mostly unrebutted evidence—thus supports the jury's verdict against Dolce and Conway.

Defendants Dolce and Conway next argue that there was insufficient evidence to establish supervisory liability against them because they did not act with intent to discriminate. In discrimination cases, however, inaction may be actionable. The failure to promptly and properly handle workplace complaints, as set forth above, constitutes personal involvement in the deprivation sufficient to support liability. See Duch v. Jakubek, 588 F.3d 757, 766 (2d Cir. 2009).

The unrebutted evidence at trial established that both Defendants Dolce and Conway had direct knowledge of the hostile work environment that Small faced yet elected to ignore it and failed to forward Small's complaints to the Office of Diversity Management for formal investigation. There was further evidence that Dolce directly contributed to the discrimination by reassigning Small to a less desirable classroom and

restricting her movement around the facility while taking no action against Defendant Cuer. Thus, the evidence was sufficient for the jury to find supervisory liability as to both Dolce and Conway based on at least (1) direct participation in the hostile work environment, (2) failure to remedy the hostile work environment after being informed that it existed, (3) gross negligence in the supervision of Cuer, and (4) deliberate indifference to Small's plight. See Liner, 582 F. Supp. 2d at 433. The trial evidence was therefore more than sufficient to support the jury's verdicts against Dolce and Conway, and they have made little effort to show otherwise. See, e.g., Saxon v. Attica Med. Dep't, 468 F. Supp. 2d 480, 483 (W.D.N.Y. 2007) ("personal involvement can be established upon a showing that a supervisory official became aware of a violation and failed to remedy it"); Wise v. N.Y. City Police Dep't, 928 F. Supp. 355, 368-69 (S.D.N.Y. 1996) (finding that a supervisory officer could be personally involved in an alleged deprivation of rights when the plaintiff had proffered evidence that the officer knew of the harassment but failed to remedy it).

It must further be noted that these two arguments ring particularly hollow when applying the Rule 50 standard: consideration of all evidence in the light most favorable to Small and crediting all reasonable inferences in her favor. See Jones, 691 F.3d at 80. Moreover, Defendants Dolce and Conway have failed to show a complete lack of evidence supporting the jury's verdict or such overwhelming evidence in their favor such that they are entitled to judgment as a matter of law. See Cash, 654 F.3d at 333. Their

request for judgment as a matter of law or relief from the final judgment[5] on these grounds is therefore denied.

### 4. Defendants Dolce and Conway have not demonstrated that they are entitled to qualified immunity as a matter of law.

Defendants Dolce and Conway alternatively argue that they are entitled to judgment as a matter of law on the basis of qualified immunity. At trial, the jury rejected their qualified immunity defenses. (Docket No. 197.)

Qualified immunity protects officials from § 1983 liability if (1) their actions did not violate clearly established law, or (2) it was objectively reasonable for them to believe that their actions did not violate the law. See Warren v. Keane, 196 F.3d 330, 332 (2d Cir. 1999). Here, Defendants Dolce and Conway again minimize their conduct by arguing that it was not clearly established that failing to report Small's complaint to the Office of Diversity Management would violate her constitutional rights, since Defendant Cuer's actions occurred outside of the workplace. This argument is wholly unpersuasive.

First, Defendants Dolce and Conway once again take the narrowest view of the evidence and construe it entirely in their favor, blatantly ignoring the majority of the trial evidence and the proper standard for judgment as a matter of law.

---

[5] Rule 60 (b) enumerates certain circumstances under which a district court may relieve a party from a final judgment. Generally, a Rule 60 (b) motion is granted only in "extraordinary circumstances" when it is necessary to "override the finality of judgments in the interest of justice." Andrulonis v. United States, 26 F.3d 1224, 1235 (2d Cir. 1994); see also Nemaizer v. Baker, 793 F.2d 58, 61 (2d Cir. 1986) (noting that "[s]ince 60 (b) allows extraordinary judicial relief, it is invoked only upon a showing of exceptional circumstances"). Defendants Conway and Dolce have made no such showing here.

Second, the factual premise of their argument—that Defendant Cuer's offending conduct occurred outside of the workplace—is simply not true. As indicated above, Small presented abundant evidence that Cuer harassed her at Attica.

Third, Defendants Dolce and Conway's contention that their failure to forward Small's complaint was simply a "mistake in judgment" flies directly in the face of the jury's findings and ignores the weight of the trial evidence, which established that their conduct went beyond simply failing to timely report Small's complaint and included deliberately failing to remedy the discrimination and hostile work environment despite having direct knowledge of its existence.

Accordingly, for these reasons, Defendants Dolce and Conway's claim that they are entitled to judgment as a matter of law based on qualified immunity is unfounded, and therefore, denied. The jury's verdict against them will stand.

**B. Defendant Cuer's Post-Trial Motion**

Defendant Cuer moves for a new trial or remittitur of the verdict under Rule 59 (a), and for alteration or amendment of the judgment under Rule 59 (e).

**1. Defendant Cuer has not demonstrated that he is entitled to a new trial.**

Defendant Cuer argues that he is entitled to a new trial because the jury's verdict is against the weight of the evidence and its compensatory damages award is unclear, ambiguous, and duplicative.

"A motion for a new trial ordinarily should not be granted unless the trial court is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice." <u>Townsend</u>, 679 F.3d at 51 (internal citations and quotation marks

omitted) (quoting <u>Medforms</u>, 290 F.3d at 106).  When damages are challenged as duplicative, "[t]here is a presumption that a jury's award is valid."  <u>Bender v. City of N.Y.</u>, 78 F.3d 787, 793 (2d Cir. 1996).

Defendant Cuer first asserts that a new trial is required because the verdict is against the weight of the evidence.  He does not, however, offer any argument or evidence in support of this bald assertion.  He therefore fails to carry his burden.  <u>See</u> <u>Norton</u>, 145 F.3d at 118 (noting that the party seeking to overturn a verdict carries the burden of proof).

Defendant Cuer next argues that a new trial is necessary because the jury's compensatory damages award is unclear, confusing, ambiguous, and duplicative.  He correctly notes that the jury awarded $2.4 million in compensatory damages against DOCCS, and then awarded an equal amount in compensatory damages against the individual defendants apportioned among them—Cuer ($1.68 million); Dolce ($480,000); Conway ($240,000).  Cuer takes issue with this award as confusing because, in his view, "the question remains what amount of compensatory damages the Jury intended to award, either $2,400,000.00 or that amount multiplied by two."  (Memorandum of Law, Docket No. 205, p. 5.)

Contrary to Defendant Cuer's argument, nothing in the jury's verdict suggests that it intended a single, collective award of $2.4 million against all defendants.  Cuer maintains that the jury may have intended a total award of $2.4 million, which it then apportioned as $1.68 million against Cuer, $480,000 against Dolce, and $240,000 against Conway.  (Affidavit of James Wujcik, Docket No. 204-1, ¶¶ 10-17.)  But this cannot be,

because the verdict sheet on its face reflects that the jury entered individual damage awards against each separate defendant, as this Court instructed it to do. Moreover, under Cuer's formulation, the jury would have made no award against DOCCS, which it clearly found liable.

Rather, the completed verdict form quite plainly reflects what the jury intended: a compensatory damages award of $4.8 million (not including front and back pay). It awarded $2.4 million in compensatory damages against DOCCS, and another $2.4 million in compensatory damages collectively against Defendants Cuer, Dolce, and Conway, for a collective compensatory damages award of $4.8 million. In apportioning the total $4.8 million award, the jury may well have found that DOCCS was 50% responsible; that Cuer was 35% responsible; that Dolce was 10% responsible; and that Conway was 5% responsible. Setting aside the amount of the award, Cuer offers no reason why the jury could not reasonably proceed in this manner.

In any event, Defendant Cuer waived each of the arguments he now raises because he failed to object at trial.[6] See Lore v. City of Syracuse, 670 F.3d 127, 160 (2d Cir. 2012) ("A party that fails to object at trial to the substance or ambiguity of special verdict questions to be put to the jury waives its right to a new trial on that ground and has no right to object to such matters on appeal . . . unless the error is fundamental."); Kosmynka v. Polaris Indus., Inc., 462 F.3d 74, 83 (2d Cir. 2006) ("a party waives its

---

[6] To the extent that Defendant Cuer's argument is directed to deficiencies in the jury verdict form itself, this argument too is waived because Cuer also failed to object to the verdict form at trial. See Jarvis v. Ford Motor Co., 283 F.3d 33, 57 (2d Cir. 2002) (noting that the "failure to object to a jury instruction or the form of an interrogatory prior to the jury retiring results in a waiver of that objection").

objection to any inconsistency in a jury verdict if it fails to object to the verdict prior to the excusing of the jury"); U.S. Football League v. Nat'l Football League, 842 F.2d 1335, 1367 (2d Cir. 1988) (finding waiver when "the jury returns an ambiguous verdict and counsel fails to seize the opportunity to raise an appropriate objection"). Cuer also waived any arguments that the compensatory damage awards are duplicative. See E.J. Brooks Co. v. Cambridge Sec. Seals, 12-CV-2937(LAP), 2015 WL 9704079, at *12 (S.D.N.Y. Dec. 23, 2015) ("courts have found that where a party does not timely raise the issue of duplicative claims and where the jury's intention is clear, the jury's award should be upheld and any objection is waived"); see also Walker v. City of New York, 11-CV-314(CBA)(JMA), 2014 WL 12652345, at *13 (E.D.N.Y. Sept. 3, 2014) ("Failure to object to a jury verdict form or the jury's verdict waives a party's argument that damages are duplicative.") (citing Bseirani v. Mashie, 107 F.3d 2, 1997 WL 3632, at *1 (2d Cir. 1997) ("By not objecting to the instructions . . . or requesting that the jury be questioned before being discharged, [defendant] has waived the argument that the damages are duplicative.)

Accordingly, Defendant Cuer's request for a new trial on these grounds is denied.

**2. The damages award against Defendant Cuer is subject to remittitur.**

Defendant Cuer seeks remittitur of the jury's damages award against him on the grounds that it is excessive when weighed against the trial evidence. The jury returned a verdict in Small's favor on both causes of action that she brought against Cuer. For Cuer's deprivation of Small's federally protected right to be free from a hostile work environment, the jury awarded Small $1 million in compensatory damages and $50,000

in punitive damages.  For Cuer's aiding and abetting the unlawful discrimination and hostile work environment that DOCCS engaged in, the jury awarded Small $680,000 in compensatory damages, $370,000 in back pay, and $1.8 million in front pay.  The jury's total award against Cuer was thus $3.9 million.

"A  jury has broad discretion in measuring damages," Dotson v. City of Syracuse, No. 5:04-CV-1388 NAM/GJD, 2011 WL 817499, at * 13 (N.D.N.Y. Mar. 2, 2011), but "there must be an upper limit, and whether that has been surpassed is . . . a question of law," Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 435, 116 S. Ct. 2211, 2223, 135 L. Ed. 2d 659 (1996) (quoting Dagnello v. Long Island R.R. Co., 289 F.2d 797, 806 (2d Cir. 1961)).  If a district court finds that the limit has been eclipsed, and that the damages are excessive, it may order a new trial, a new trial limited to damages, or remittitur. Thorsen v. County of Nassau, 722 F. Supp. 2d 277, 292 (S.D.N.Y. 2010) (citing Cross, 417 F.3d at 258).

Remittitur, "a limited exception to the sanctity of jury fact-finding", see Akermanis v. Sea-Land Serv., Inc., 688 F.2d 898, 902 (2d Cir.1982), "is the process by which a court compels a plaintiff to choose between reduction of an excessive verdict and a new trial," Earl v. Bouchard Transp. Co., 917 F.2d 1320, 1328 (2d Cir. 1990).  It is appropriate where "a properly instructed jury, hearing properly admitted evidence, nevertheless makes an excessive award."  Werbungs Und Commerz Union Austalt v. Collectors' Guild, Ltd., 930 F.2d 1021, 1027 (2d Cir. 1991).  A court's decision to compel such a choice depends on whether the jury's award is "so high as to shock the judicial conscience and constitute a

denial of justice." <u>Payne v. Jones</u>, 711 F.3d 85, 96 (2d Cir. 2012) (quoting <u>Zarcone v. Perry</u>, 572 F.2d 52, 56 (2d Cir. 1978)).

### a. The compensatory damages award against Cuer is subject to remittitur.

Focusing on the jury's entire $7.02 million verdict returned against all defendants, Defendant Cuer argues that the award "is excessive when compared to controlling precedent and when weighed against the evidence." (Memorandum of Law, Docket No. 205, p. 7.) Cuer, however, neither cites controlling precedent nor identifies the trial evidence upon which he relies.

The only specific argument that Cuer makes in favor of remittitur is that the jury's overall damages award of $7.02 million is excessive and "shocks the conscience" because it is more than triple the $2.3 million valuation of Small's claims by her economic expert. This argument limps for two reasons.

First, the other defendants in this action do not seek remittitur of the damages against them, and Defendant Cuer cannot do so on their behalf. Cuer's arguments must therefore be examined in relation to the $3.85 million in compensatory damages awarded against him alone (not counting the $50,000 punitive damages award), not the overall jury award of $7.02 million.

Second, Defendant Cuer's argument focuses solely on limited evidence concerning the economic value of Small's claims while entirely ignoring the extensive evidence of psychological and physical harm that he caused, as presented at trial through treating psychologist Dr. Fiona Gallacher and expert psychologist Dr. Norman Lesswing. Their largely unrebutted testimony, which the jury could reasonably have accepted,

23

supports a significant award for emotional damages in this case.  See Patrolmen's

Benevolent Ass'n. of City of New York v. City of New York, 310 F.3d 43, 55 (2d Cir. 2002)

(reasoning that compensatory damages for emotional distress are permitted under § 1983

when substantiated by evidence in addition to a plaintiff's subjective testimony, such as

by witnesses to the plaintiff's distress or by the objective circumstances of the violation

itself).

Because Defendant Cuer concedes that Small presented evidence at trial from

which the jury could reasonably find that her economic damages alone were $2.3 million,

the question becomes whether the balance of the jury's award—$1.55 million—which

may fairly be attributed to emotional and physical damage, is "so high as to shock the

judicial conscience and constitute a denial of justice."  Payne, 711 F.3d at 96.

One of the most concrete methods used to resolve such questions is to "consider[

] . . .  the amounts awarded in other, comparable cases."  DiSorbo v. Hoy, 343 F.3d 172,

183 (2d Cir. 2003).  Defendant Cuer, however, makes no effort whatsoever to employ this

method: he does not cite a single case, comparable or otherwise, in support of his

contention that the jury's verdict shocks the conscience.  Nonetheless, examination of

caselaw compels the finding that remittitur is required.

Emotional distress awards within the Second Circuit can "generally be grouped

into three categories of claims: 'garden-variety,' 'significant' and 'egregious.'"  See, e.g.,

Olsen v. County of Nassau, 615 F. Supp. 2d 35, 46 (E.D.N.Y. 2009); Mugavero v. Arms

Acres, Inc., 680 F. Supp. 2d 544, 578 (S.D.N.Y. 2010).

In "garden variety" emotional distress cases, "the evidence of mental suffering is generally limited to the testimony of the plaintiff, who describes his or her injury in vague or conclusory terms, without relating either the severity or consequences of the injury." Khan v. Hip Centralized Lab. Servs., Inc., No. CV-03-2411, 2008 WL 4283348, at *11 (E.D.N.Y. Sept. 17, 2008). "Garden variety" emotional distress claims "generally merit $30,000 to $125,000 awards." Mugavero, 680 F. Supp. 2d at 578.

"Significant" emotional distress claims "are based on more substantial harm or more offensive conduct, are sometimes supported by medical testimony and evidence, evidence of treatment by a healthcare professional and/or medication, and testimony from other, corroborating witnesses." Khan, 2008 WL 4283348, at *11. "Significant" claims merit awards at least as high as $175,000. See, e.g., Mugavero, 680 F. Supp. 2d at 578 (upholding total emotional distress award of $175,000 where the plaintiff offered evidence of "more than a 'garden variety' claim").

Finally, "egregious" emotional distress claims "generally involve either 'outrageous or shocking' discriminatory conduct or a significant impact on the physical health of the plaintiff." Khan, 2008 WL 4283348, at *12. Substantially higher awards are appropriate for these types of claims. See, e.g., Ramirez v. N.Y. City Off-Track Betting Corp., 112 F.3d 38, 41 n.1 (2d Cir. 1997) (upholding $500,000).

From the unrebutted testimony at trial, the jury could reasonably have determined that Cuer's conduct was outrageous and shocking, such that it had a significant impact on Small's psychological and physical health. Small presented evidence that Cuer's campaign of harassment left her with debilitating psychological conditions—including

25

post-traumatic stress disorder, major depressive disorder, sleep phobia, agoraphobia, and anxiety—as well as physical ailments, including loss of hair, grinding teeth, incessant coughing leading to a prolapsed bladder, twitching, loss of appetite, weight gain, lethargy, nausea, and diarrhea. The jury may therefore have reasonably found this to be an egregious case warranting substantial damages.

Unlike Defendant Cuer, Small presents cases that she deems supportive of the jury's award, but upon close examination, none of them are comparable to the circumstances here. In Turley, the Second Circuit upheld a compensatory damages award of $1.32 million in an employment action, but that case, which this Court presided over, involved a 3-year pattern of extreme racial harassment that was "unique, combining years of grotesque psychological abuse leading to a marked decline in [the plaintiff's] mental health and well-being." 774 F.3d at 146, 162-164. The facts here do not approach those in Turley. In Manganiello v. City of New York, the Second Circuit upheld a compensatory damages award of $1,426,261 in a § 1983 malicious prosecution case, but only $116,600 of that award was for non-pecuniary damages. 612 F.3d 149, 168 (2d Cir. 2010). In Osorio v. Source Enters., Inc., a Title VII gender-discrimination/hostile work environment case in which the jury awarded $4 million in compensatory damages for emotional distress and harm to reputation, the district court refused to grant remittitur, but it cannot be determined how much of the $4 million award was attributable to harm to reputation and how much to emotional damages. No. 05 Civ. 10029(JSR), 2007 WL 683985, at *5 (S.D.N.Y. Mar. 2, 2007). Small's cases are therefore not instructive.

In this Court's view, what amounts to a $1.55 million psychological/physical damages award against Defendant Cuer does in fact shock the conscience and constitute a denial of justice.  Remittitur is therefore required.  But without question, Small suffered persistent, pervasive, troubling discrimination that no one would remedy, despite her cries.  It is an egregious case, but one that lasted months, not years.  It is akin to <u>Chopra v. Gen. Elec. Co.</u>, a Title VII case involving retaliatory treatment over the course of nine months in which the district court upheld the jury's $500,000 award for emotional distress. 527 F. Supp. 2d 230, 247 (D.Conn. 2007).  It is also akin to <u>Ramirez</u>, a Title VII case involving discrimination and retaliation that occurred over a period of eight months in which the Second Circuit upheld the district court's remittitur of the jury's non-pecuniary, pain-and-suffering award to $500,000.  112 F.3d at 41, n. 1.  Consequently, this Court finds that an emotional damages award of $500,000 is warranted.

Accordingly, the remittitur offered is a total compensatory damages award against Defendant Cuer of $2.88 million, which represents $2.3 million in unchallenged pecuniary damages[7] and $500,000 in psychological/physical damages.  If Small does not accept this remittitur, this Court will vacate the damages award against Cuer and conduct a new trial on damages.

### b.  The punitive damages award against Defendant Cuer is affirmed.

In addition to challenging the compensatory damages award, Defendant Cuer also seeks remittitur of the jury's $50,000 punitive damages award on the grounds that it is excessive and against the weight of the evidence.  This Court disagrees.

---

[7] This includes the jury's award of $370,000 in back pay and $1.8 million in front pay.

"Awards of punitive damages are by nature speculative, arbitrary approximations."
Payne, 711 F.3d at 93. Nonetheless, courts have an obligation to ensure that such awards are "fair, reasonable, predictable, and proportionate." Id. Judicial review of punitive damages awards, in fact, "has been a safeguard against excessive verdicts for as long as punitive damages have been awarded." Id. at 96 (citing Honda Motor Co. v. Oberg, 512 U.S. 415, 421, 114 S. Ct. 2331, 129 L. Ed. 2d 336 (1994)).

Punitive damages must be "reasonable in their amount and rational in light of their purpose to punish what has occurred and to deter its repetition." Pac. Mut. Life Ins. Co. v. Haslip, 499 U.S. 1, 21, 111 S. Ct. 1032, 1045, 113 L. Ed. 2d 1 (1991). An award of punitive damage is reversed only if it is "so high as to shock the judicial conscience and constitute denial of justice." Hughes v. Patrolmen's Benevolent Ass'n, 850 F.2d 876, 883 (2d Cir. 1988).

A court's authority to limit an award derives in part from the Due Process Clause of the Fourteenth Amendment. Cooper Indus., Inc. v. Leatherman Tool Grp., Inc., 532 U.S. 424, 433, 121 S. Ct. 1678, 1683, 149 L. Ed. 2d 674 (2001). When a federal court reviews a state-court award, punitive damages violate the Due Process Clause if they are "grossly excessive." Id.; BMW of N. Am., Inc. v. Gore, 517 U.S. 559, 562, 116 S. Ct. 1589, 134 L. Ed. 2d 809 (1996). But a federal trial court reviewing its own jury's verdict for excessiveness has an independent "supervisory authority." Payne, 711 F.3d at 97. Therefore, "a degree of excessiveness less extreme than 'grossly excessive' will justify" remittitur in cases such as this. Id.

The three guideposts articulated by the Supreme Court in <u>Gore</u> inform this inquiry. 517 U.S. at 574–75. Those guideposts are: (1) degree of reprehensibility of the defendant's conduct; (2) relationship of the punitive damages to the compensatory damages; and (3) disparity between the punitive damages award and penalties imposed in comparable cases. <u>Id.</u>; <u>Payne</u>, 711 F.3d at 101. Defendant Cuer's limited argument relates only to reprehensibility.

The degree of reprehensibility of the defendant's misconduct is "[p]erhaps the most important indicum of the reasonableness of a punitive damages award." <u>Gore</u>, 517 U.S. at 575. "This guidepost is particularly important and useful because punitive damages are intended to punish, and the severity of punishment, as in the case of criminal punishments, should vary with the degree of reprehensibility of the conduct being punished." <u>Payne</u>, 711 F.3d at 101.

The Supreme Court has outlined five factors relevant to determining the reprehensibility of a defendant's conduct. <u>See State Farm Mut. Auto. Ins. Co. v. Campbell</u>, 538 U.S. 408, 419, 123 S. Ct. 1513, 1521, 155 L. Ed. 2d 585 (2003). Courts should consider whether

> the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident.

<u>Id.</u>

Defendant Cuer's only argument in support of his request for remittitur of punitive damages is that "the evidence at trial shows intermittent contact and communication between [himself] and [Small] after March 2010." (Memorandum of Law, Docket No. 205, p. 6.) Cuer argues that punitive damages are unwarranted because he transferred out of the Academic Building and away from Small to minimize his contact with Small after their friendship ended. In so arguing, Cuer once again ignores the unrebutted evidence of his harassing behavior, including leaving notes on Small's car, accusing Small of being with other men, filing false charges against her at work, and acting in a manner to cause the need for Small to obtain a protective order against him, all during the period when he claims to have minimized his contact with her.

As set out above, the trial evidence was sufficient for the jury to find Defendant Cuer's conduct sufficiently reprehensible to warrant punitive damages. In addressing the reprehensibility factors (which Cuer fails to do), Cuer caused both psychological and physical harm; he totally disregarded Small's mental health; he preyed on Small's vulnerabilities (though not financial); he persisted in repeated acts of harassment both before and after Small asked him to stop; and he intentionally targeted Small and warped her religious beliefs to coerce or deceive her into believing that God wanted her to succumb to his otherwise unwanted advances. Cuer's conduct was thus sufficiently reprehensible to support the jury's award of punitive damages.

The next factor is proportionality. "Courts must ensure that the measure of punishment is both reasonable and proportionate to the amount of harm to the plaintiff and to the general damages recovered." State Farm, 538 U.S. at 426. This factor—the

30

ratio between the punitive and compensatory damages—is the "most commonly cited indicum of an unreasonable or excessive punitive damages award."  Gore, 517 U.S. at 580.  A bright-line test, however, is inappropriate, see id. at 582–83, as "it is difficult or impossible to make useful generalizations," Payne, 711 F.3d at 102.  But "in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages will satisfy due process."  State Farm, 538 U.S. at 425.

Here, unlike in most cases, the jury's punitive damages award against Defendant Cuer is a fraction of the compensatory damage award, not a multiple of it.  The jury awarded $50,000 in punitive damages against a remitted compensatory damages award against Cuer of $2.88 million.  The punitive damages award is therefore reasonable and proportionate, and Cuer makes no specific arguments otherwise.

The third, and arguably least important, guidepost assesses the "disparity between the punitive damages award and the 'civil penalties authorized or imposed in comparable cases.'"  State Farm, 538 U.S. at 428 (quoting Gore, 517 U.S. at 575).  Defendant Cuer has not come forward with any comparable cases demonstrating any impermissible disparity in the jury's punitive damages award.

Considering the totality of the circumstances, including the degree of reprehensibility, the compensatory award, Defendant Cuer's failure to assert meaningful arguments, and the ultimate purpose of punitive damages—to punish and deter future misconduct—this Court finds that the jury's $50,000 punitive damages award is both reasonable and well supported by the trial evidence.  It is therefore affirmed.[8]

---

[8] For all of the reasons stated herein, Defendant Cuer's request to alter or amend the judgment under Rule

### C. Small's Motion for Attorneys' Fees, Costs, and Interest

Small seeks attorneys' fees in the amount of $1,054,600, costs in the amount of $100,448.72, and pre- and post-judgment interest at the New York rate of 9%. Defendants oppose only Small's request for attorneys' fees.[9]

#### 1. Small is entitled to attorneys' fees in the amount of $862,395.30.

To ensure that federal rights are adequately enforced, a prevailing party in a civil rights action may recover, subject to the court's discretion, "a reasonable attorney's fee." See 42 U.S.C. § 1988 (b) (permitting recovery of attorneys' fees in actions brought under 42 U.S.C. § 1983); 42 U.S.C. § 2000e-5 (k) (permitting recovery of attorneys' fees in Title VII actions); Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 550, 130 S. Ct. 1662, 176 L. Ed. 2d 494 (2010). The same is true for a prevailing party in an employment discrimination suit brought under the New York Human Rights Law. See N.Y. Exec. L. § 297 (10) (providing that "with respect to a claim of employment . . . discrimination where sex is a basis of such discrimination . . . the court may in its discretion award reasonable attorney's fees attributable to such claim to any prevailing party"). A prevailing party may also seek attorneys' fees for post-trial work, including applications for attorneys' fees and costs. See Hines v. City of Albany, 862 F.3d 215, 223 (2d Cir. 2017).

Determining attorneys' fees involves a two-step process. First, the court must determine whether the party seeking fees is a prevailing party. See Pino v. Locascio, 101

---

59 (e), which is not brought on an independent basis, is also denied.

[9] Defendant Cuer did not file separate opposition to Small's motion. He joined the opposition filed by Defendants DOCCS, Dolce, and Conway. (Docket No. 212.)

F.3d 235, 237 (2d Cir. 1996).  If so, the court must then assess whether the requested fee is reasonable.  See id.  "A 'reasonable' fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case."  Perdue, 559 U.S. at 552.  The fee-seeking party bears the burden of "establishing entitlement to an award and documenting the appropriate hours expended and hourly rates."  See Savoie v. Merchants Bank, 166 F.3d 456, 463 (2d Cir. 1999).

In this circuit, if a court finds a fee award to be appropriate, it must set a "reasonable hourly rate," which is "the rate a paying client would be willing to pay."  Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 190 (2d Cir. 2008).  To determine this rate courts must assess a variety of case-specific variables.  See Adorno v. Port Auth. of N.Y. & N.J, 685 F. Supp. 2d 507, 510-11 (S.D.N.Y. 2010).  Those variables include the twelve Johnson factors: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case;  (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  See Arbor Hill, 522 F.3d at 190 (citing Johnson v. Georgia Highway Exp., Inc., 488 F.2d 714, 717-19 (5th Cir. 1974)).  The court must also consider that a paying client would wish to spend the minimum necessary to litigate the case effectively.  See id.

Once the reasonable hourly rate is identified, the court uses it to calculate the presumptively reasonable fee by multiplying the rate by the number of hours reasonably expended. <u>See</u> <u>id.</u>

There is no dispute that Small is a prevailing party. A party is a prevailing party if the party "succeeds on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." <u>Farrar v. Hobby</u>, 506 U.S. 103, 109, 113 S. Ct. 566, 121 L. Ed. 2d 494 (1992). Here, Small succeeded on each of her four causes of action and obtained a significant damages award. Small is therefore entitled to recover her attorneys' fees. <u>See</u> <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 429, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983) ("a prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust").

Small seeks $1,054,600 in attorneys' fees. She supports her request with a 162-page billing statement covering the time period August 10, 2011, through September 28, 2018. (Billing Statement, Docket No. 201-2.) The billing statement contains entries from multiple legal professionals and reflects instances of "block billing." Defendants maintain that Small's fee request is unreasonable both because the requested hourly rates exceed those permitted in this district and because the billing statement shows overstaffing, inflated billing, and vague entries. Defendants request that Small's request be trimmed by one-third to account for these overages.

### a. Reasonableness of the hourly rates claimed.

The first issue is the reasonableness of the hourly rates claimed, which have periodically increased over the 7-year course of this litigation. For example, lead counsel

Jennifer Shoemaker, a litigation partner with 18 years' experience in labor and employment litigation, billed $493,755.50 for 1,670.6 hours at hourly rates that varied from $225 to $320. (Shoemaker Affirmation; Docket No. 201, ¶¶ 47, 48; Billing Statement, p. 5.) Second-chair Alina Nadir, a litigation associate with 8 years' experience in labor and employment litigation, billed $329,341 for 1,317.6 hours at hourly rates that varied from $235 to $260. (Id. ¶ 50; Billing Statement, p. 5.) Principal paralegal Janice Hance, a litigation paralegal with 28 years' experience, billed $194,831.50 for 1,180.1 hours at hourly rates that varied from $135 to $175. (Shoemaker Affirmation; Docket No. 201, ¶ 49; Billing Statement, p. 5.). For ease of analysis, this Court will divide the total amount billed by the total number of hours claimed to reach an average single rate-per-hour. This results in Shoemaker billing about $295/hour; Nadir billing about $250/hour; and Hance billing about $165/hour.

The billing statement also contains entries by eight other lawyers and five other paralegals. Using the same method described above, the other eight lawyers billed at the following average rates: Ramsey ($305/hour); Fitch ($295/hour); Cordello ($265/hour); Gregorio ($240/hour); Farrar ($258/hour); Keneally ($365/hour); Nunes ($345/hour); and Hull ($330/hour). (Billing Statement, pp. 5-6.) The five other paralegals billed at rates as follows: Cross ($160/hour); Coleman ($125/hour); Smith-Schuler ($180); Soeffing ($172/hour); Bansbach ($175/hour). (Id.)

Assessing these average rates-per-hour, this Court finds that Shoemaker's rate of $295/hour and Nadir's rate of $250/hour are reasonable and within the range of rates approved in this district in civil rights actions for attorneys of comparable experience and

expertise.  See, e.g., Murray v. Coleman, 232 F. Supp. 3d 311, 317 (W.D.N.Y. 2017) (finding in-court rate of $300/hour and out-of-court rate of $275/hour reasonable in civil rights action); Davis v. Shah, 12-CV-6134-CJS, 2017 WL 2684100, at *2-4 (W.D.N.Y. June 22, 2017) (approving $260/hour for attorney with 7 years' experience); Costa v. Sears Home Improvement Prods., Inc., 212 F. Supp. 3d 412, 420-21 (W.D.N.Y. 2016) (noting that hourly rates generally approved in the WDNY for Title VII cases "are in the range of $225-$250 for partner time or senior associate time, $150-$175 for junior associate time, and $75 for paralegal time" but approving hourly rates of $300/hour for attorney with 21 years' experience and $250/hour for attorney with 9 years' experience) (collecting cases); Anello v. Anderson, 191 F. Supp. 3d 262, 282-83 (W.D.N.Y. 2106) (approving unopposed rate of $250 per hour for partner in civil rights case).  Considering all of the relevant variables, this Court finds these are rates a client would willingly pay. These rates are therefore approved as the reasonable hourly rates in this case.

For the eight other attorneys, Small provides little information about their experience and expertise, other than identifying whether they are a partner or associate. (See Shoemaker Affirmation, Docket No. 201, ¶ 55.)  Consequently, partners will be approved at $295/hour and associates will be approved at $250/hour, unless the rate they actually billed falls below these approved rates.  See Cold Spring Const. Co. v. Spikes, No. 11-CV-700S, 2013 WL 5295654, at *3 (W.D.N.Y. Sept. 18, 2013) (assigning rates where no information was provided as to the experience and skill of the professionals who worked on the matter).

In assessing Small's paralegal rate of $165/hour, this Court finds that it is excessive. In this district, a paralegal rate of $75/hour predominates, see Costa, 212 F. Supp. 3d at 421; Anello, 191 F. Supp. 3d at 283; Glenn v. Fuji Grill Niagara Falls, LLC, 14-CV-380S, 2016 WL 1557751, at *7 (W.D.N.Y. Apr. 18, 2016), with a recent case approving $115/hour for a paralegal with 7 years' experience, see Shah, 2017 WL 2684100, at *2.

To strike a balance between Hance's 28 years' experience and the unknown experience of the other paralegals who billed considerable time, this Court will apply a $100/hour rate to all paralegal time, a rate that this Court finds a reasonable paying client would willingly pay.

Applying these reasonable hourly rates—$295/hour for partners; $250/hour for associates; $100/hour for paralegals—Small's fee request becomes $966,242.50 for 4,388.8 hours as follows:

| Name | Position | Hourly Rate | Hours Billed | Total |
|------|----------|-------------|--------------|-------|
| Shoemaker | Partner | $295 | 1,670.6 | $492,827 |
| Ramsey | Partner | $295 | 4.6 | $1,357 |
| Fitch | Partner | $295 | .1 | $29.50 |
| Keneally | Partner | $295 | 2.7 | $796.50 |
| Nunes | Partner | $295 | .9 | $265.50 |
| Hull | Partner | $295 | 1 | $295 |
| Nadir | Associate | $250 | 1,317.6 | $329,400 |

37

| | | | | |
|---|---|---|---|---|
| Cordello | Associate | $250 | .3 | $75 |
| Gregorio | Associate | $240 | 6.3 | $1,512 |
| Farrar | Associate | $250 | 8.1 | $2,025 |
| Hance | Paralegal | $100 | 1,180.1 | $118,010 |
| Cross | Paralegal | $100 | 130.4 | $13,040 |
| Coleman | Paralegal | $100 | 49.4 | $4,940 |
| Smith-Schuler | Paralegal | $100 | .6 | $60 |
| Soeffing | Paralegal | $100 | 15.2 | $1,520 |
| Bansbach | Paralegal | $100 | .9 | $90 |
| | | | **Total** | **Total** |
| | | | **4,388.8** | **$966,242.50** |

**b. Reasonableness of the time expended.**

The second issue is the reasonableness of the time expended.  The party seeking attorney's fees must support the number of hours expended with "contemporaneous time records . . . [that] specify, for each attorney, the date, the hours expended, and the nature of the work done."  N.Y.S. Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1147-48 (2d Cir. 1983).  This Court must exclude any hours that were "excessive, redundant, or otherwise unnecessary."  Hensley, 461 U.S. at 434.  Indeed, all time must be reasonably expended.  Louis Vuitton Malletier S.A. v. LY USA, Inc., 676 F.3d 83, 111 (2d Cir. 2012). In making this determination, the court must ask whether the attorney exercised "billing judgment."  See Anderson v. Rochester–Genesee Reg'l Transp. Auth.,

38

388 F. Supp. 2d 159, 163 (W.D.N.Y. 2005). If the Court's review is stymied by vague or excessive entries or block-billing practices, an across-the-board fee reduction may be warranted. See Zuffa, LLC v. S. Beach Saloon, Inc., CV 15-6355 (ADS)(AKT), 2019 WL 1322620, at *8 (E.D.N.Y. Mar. 6, 2019) (citing Anderson v. Cty. of Suffolk, No. CV 09-1913, 2016 WL 1444594, at *6 (E.D.N.Y. April 11, 2016) and collecting cases).

But "the district court is not obligated to undertake a line-by-line review of [an] extensive fee application." Marion S. Mishkin Law Office v. Lopalo, 767 F.3d 144, 150 (2d Cir. 2014). Rather, the court may "use a percentage deduction as a practical means of trimming fat." McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Tr. Fund, 450 F.3d 91, 96 (2d Cir. 2006). In that regard, "[a] court has discretion to impose an across-the-board reduction if an attorney has billed excessive, redundant, or unnecessary hours." Kreisler v. Second Ave. Diner Corp., No. 10 Civ. 7592 (RJS), 2013 WL 3965247, at *3 (S.D.N.Y. July 31, 2013) (citation omitted). Across-the-board cuts may also be imposed for vague billing entries. See id.

Defendants first contend that the time Small's counsel expended is unreasonable because they overstaffed the case, using 10 attorneys and six paralegals. This raises the question whether Small's attorneys exercised sound billing judgment. As explained in Anderson:

> In assessing whether an attorney's time was reasonably expended, the Court must ask whether the attorney exercised billing judgment. As the Supreme Court has explained, "[c]ounsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. In the private sector, billing judgment

39

> is an important component in fee setting. It is no less
> important here. Hours that are not properly billed to one's
> client also are not properly billed to one's adversary pursuant
> to statutory authority."

388 F. Supp. 2d at 163 (internal quotations and citations omitted). Seeking fees for

individuals who had little or no involvement in a case is indicative of poor billing judgment.

See Costa, 212 F. Supp. 3d at 425 ("the fact that Plaintiff's counsel included time of about

one hour for two separate attorneys . . . who really had no involvement in the case . . .

suggests . . . that Plaintiff's counsel has done anything but exercise billing judgment").

Paying clients would likely not be billed, nor would they tolerate being billed, for such time.

Here, Small seeks attorneys' fees for work performed by several individuals who

are only peripherally related to this case. For example, of the 3,012.2 total attorney hours

billed, only 24 of those hours (or less than 1%) were billed by attorneys other than

Shoemaker and Nadir. Similarly, of the 1,376.6 total paralegal hours billed, only 16.7 of

those hours (or less than 2%) were billed by paralegals other than Hance, Cross, and

Coleman. Given this lack of billing judgment, this Court will not award fees for work done

by Ramsey, Fitch, Keneally, Nunes, Hull, Cordello, Gregorio, Farrar, Smith-Schuler,

Soeffing, and Bansbach, each of whom is only tangentially related to this litigation. See

id. at 426 (disallowing fees for individuals only tangentially involved in the case, ranging

from an individual who billed .7 hours to one who billed 28.3 hours).

Defendants next argue that the total number of hours claimed—now 4,347.6—is

excessive given the circumstances of this particular case. Defendants maintain that "the

legal analysis was the same [for all claims] and [the] factual record was particularly

simple." (Memorandum of Law, Docket No. 215, p. 2.) Without citing any examples, they

fault Small's attorneys for expending an "excessive, redundant number of hours for attorneys who have practiced as long as they have." (Id.) They also contend that "[m]any of the time entries raise serious concerns about the accuracy of the time spent on certain days and for certain tasks." (Id. at p. 3.) In particular they argue that Small's counsel spent an unreasonable amount of time preparing for trial and completing discovery and summary judgment motions. This Court disagrees.

Although the legal claims were not unusually complicated, this case was not as straightforward as Defendants suggest. The parties heavily litigated for more than seven years. After Defendants answered Small's amended complaint on August 27, 2013, it took approximately 2½ years to complete discovery (complete with motions), after which the parties litigated their summary judgment motions. Small's counsel interviewed more than 24 witnesses and reviewed thousands of pages of documents. (Shoemaker Affirmation, Docket No. 218, ¶ 6.) Significantly, counsel had to fully prepare for trial three different times, due to the first two trials needing to be unexpectedly adjourned.[10] This explains the significant trial preparation charges. The parties litigated motions in limine and prepared extensive pretrial submissions. Trial then lasted 12 days. An unusual amount of time and effort was therefore required to bring this case to trial.

Defendants' contention that many of the time entries "raise serious concerns" is also unfounded. Defendants cite several instances in which "Plaintiff's counsel" billed

---

[10] Trial was first scheduled to commence on September 26, 2017, but a criminal trial involving detained defendants took priority and forced an adjournment. (See Docket No. 146.) Trial was then scheduled to commence on March 13, 2018, but had to be adjourned due to a death in Defendants' counsel's family. (See Docket No. 155.) Trial finally proceeded on September 11, 2018. (See Docket No. 179.)

more than 24 hours in a single day, a circumstance that, if true, would certainly raise suspicion.  (Memorandum of Law, Docket No. 215, p. 3.)  But what Defendants fail to recognize is that multiple legal professionals worked on the case in a single day, thus leading to what otherwise would appear to be billing anomalies.  For example, on June 13, 2017, Shoemaker worked on the case for 13.2 hours; Nadir for 12.3 hours; and Hance for 5 hours.  (Billing Statement, Docket No. 201-2, pp. 107-108.)  Similar circumstances occurred on June 14 and September 14, 2017.  (Id. at pp. 108, 127.)  There is, of course, nothing improper about multiple legal professionals working on a single case at the same time so long as it is not redundant or duplicative.

The rich and unusual facts of this case required painstaking preparation and detailed presentation to the jury.  Witness testimony was crucial, particularly that of Small, who surely required delicate preparation given her fragile state.  Counsels' preparation was therefore a critical factor in obtaining the result achieved, one that was overwhelmingly in Small's favor.  In this Court's view, the time billed is commensurate with counsels' task.  This Court therefore finds that, under the unique circumstances of this case, the time expended was not unreasonable.

Finally, Defendants argue that the billing statement contains impermissibly vague entries and block-billing, such as "meet with client," "continue to review documents," "continue document review," "work on complaint," and "continue research." (Memorandum of Law, Docket No. 215, pp. 6-7.)  This Court agrees to a limited extent.

A billing entry "cannot be so vague as to bar the court from being able to decipher its meaning in the context in which it appears."  Lewis v. Am. Sugar Ref., Inc., No. 14-CV-

02302(CRK), 2019 WL 116420, at *6 (S.D.N.Y. Jan. 2, 2019). "The practice of aggregating multiple tasks into a single billing entry, known as block billing, is not *per se* prohibited, but where such entries make it hard to discern the reasonableness of time allotted to a given task, courts do consider its prevalence in deciding whether reduction is appropriate." Mayo-Coleman v. Am. Sugars Holding, Inc., 2019 WL 1034078, 2019 WL 1034078, at *4 (S.D.N.Y. Mar. 5, 2019); see also Hnot v. Willis Grp. Holdings Ltd., No. 01 CIV. 6558 GEL, 2008 WL 1166309, at *6 (S.D.N.Y. Apr. 7, 2008) ("Block-billing can make it difficult for a court to conduct its reasonableness analysis, because a single billing entry might mix tasks that are compensable with those that are not, or mix together tasks that are compensable at different rates.").

Here, the billing statement is largely adequate and sufficiently detailed, but Defendants are correct that it contains some vague entries and extensive block-billing, which makes the overall reasonableness of the listed tasks difficult to discern. This Court will therefore apply a 10% across-the-board reduction. See Aiello v. Town of Brookhaven, No. 94 Civ. 2622, 2005 WL 1397202, at *3 (E.D.N.Y. June 13, 2005) (ordering 10% reduction for difficulties arising from block-billing); Sea Spray Holdings, Ltd. v. Pali Fin. Grp., Inc., 277 F. Supp. 2d 323, 326 (S.D.N.Y. 2003) (ordering 15% reduction).

Accordingly, Small's final approved attorneys' fee award is $862,395.30 as follows:

| Name | Position | Hourly Rate | Hours Billed | Total |
|------|----------|-------------|--------------|-------|
| Shoemaker | Partner | $295 | 1,670.6 | $492,827 |
| Nadir | Associate | $250 | 1,317.6 | $329,400 |

| Hance | Paralegal | $100 | 1,180.1 | $118,010 |
|---|---|---|---|---|
| Cross | Paralegal | $100 | 130.4 | $13,040 |
| Coleman | Paralegal | $100 | 49.4 | <u>$4,940</u> |
| | | | Billed Fees | **$958,217** |
| | | | 10% reduction | **(<u>$95,821.70</u>)** |
| | | | Approved Fees | **$862,395.30** |

### 2. Small is entitled to costs in the amount of $100,448.72.

The party seeking to recover costs bears the burden of adequately documenting and itemizing the costs requested. <u>Baker v. Power Sec. Corp.</u>, 174 F.R.D. 292, 294-95 (W.D.N.Y. 1997) ("The burden is therefore upon the party seeking costs to provide adequate documentation of its costs, and a failure to do so may result in the costs being reduced or denied."). A party is not entitled to recover costs when its application fails to provide substantiation for the costs sought. <u>See</u> <u>Mendez v. Radec Corp.</u>, 907 F. Supp. 2d 353, 360 (W.D.N.Y. 2012) (denying costs that were "not adequately explained through Plaintiffs' submission"); <u>Douyon v. N.Y. Med. Health Care, P.C.</u>, 49 F. Supp. 3d 328, 352 (E.D.N.Y. 2014) ("[W]ith this record, the Court has no way of confirming that these costs . . . were incurred by counsel."); <u>Joe Hand Promotions, Inc. v. Elmore</u>, No. 11–cv-3761, 2013 WL 2352855, at *12 (E.D.N.Y. May 12, 2013) (declining to award costs due to an absence of documentation).

Here, Small seeks reimbursement of her costs in the amount of $100,448.72, including expert fees and legal research, and she has submitted a detailed invoice in

44

support.  (Invoice of Costs, Docket No. 201-3, pp. 30-49.)  Defendants do not oppose this request.  Small's application for costs is therefore approved.

### 3. Small is entitled to pre- and post-judgment interest on the judgment.

Small seeks pre-judgment interest on her Title VII compensatory damages and Title VII and New York Human Rights Law back pay awards compounded annually at the applicable New York State rate.  Small further seeks post-judgment interest on her entire award, including attorneys' fees and costs.  Defendants do not meaningfully oppose these requests.[11]

Small first seeks pre-judgment interest on her Title VII compensatory damages award.  "Under Title VII, in its discretion, a court may award pre-judgment interest on awards of compensatory damages for pain and suffering and emotional distress." Lamberson v. Six W. Retail Acquisition, Inc., No. 98 CIV. 8052(DC), 2002 WL 207016, at *1 (S.D.N.Y. Feb. 11, 2002).  Whether to award pre-judgment interest is informed by "(i) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court."  Wickham Contracting Co. v. Local Union No. 3, 955 F.2d 831, 833-34 (2d

---

[11] Defendants' only opposition to Small's requests for pre- and post-judgment interest is this throw-away line in the conclusion of their memorandum of law: ". . . and to the extent that damages are in the form of equitable relief, the plaintiff is not entitled to pre-judgment interest."  (Memorandum of Law, Docket No. 215, p. 9.)  Defendants cite 28 U.S.C. § 1961 (a) immediately after this statement.  See id.  Nothing in § 1961 (a), however, addresses equitable relief.  This Court therefore deems Small's requests for pre- and post-judgment interest to be effectively unopposed.

Cir. 1992). Given the size of the recovery in this case, this Court finds that Small has been fully compensated. Pre-judgment interest is therefore not required to make Small whole and will be denied. See Lamberson, 2002 WL 207016, at *1 (denying pre-judgment interest where not necessary to fully compensate the plaintiff or make her whole).

Small also seeks pre-judgment interest on her back-pay awards. "Title VII authorizes a district court to grant pre-judgment interest on a back pay award." Saulpaugh v. Monroe Cmty. Hosp., 4 F.3d 134, 145 (2d Cir. 1993). "Pre-judgment interest on back pay awards is an element of complete compensation." Joseph v. HDMJ Rest., Inc., 970 F. Supp. 2d 131, 151 (E.D.N.Y. 2013) (citing Loeffler v. Frank, 486 U.S. 549, 558, 108 S. Ct. 1965, 100 L. Ed. 2d 549 (1988)). It also discourages employers from delaying back pay payments. See id. at 151. As such, failing to award pre-judgment interest on back pay is ordinarily an abuse of discretion. See Clark v. Frank, 960 F.2d 1146, 1154 (2d Cir. 1992); Syrnik v. Polones Const. Corp., No. 11 Civ. 7754, 2012 WL 4122801, at *4 (S.D.N.Y. Sept. 29, 2012).

For federal claims under Title VII, courts award pre-judgment interest on back pay at the federal rate, see 28 U.S.C. § 1961 (a), compounded annually from the date the claim arises through the date of judgment. See Holness v. Nat'l Mobile Television, Inc., No. 09 CV 2601, 2012 WL 1744847, at *7 (E.D.N.Y. Feb. 14, 2012); Joseph, 970 F. Supp. at 151 ("the award of pre-judgment interest should be calculated from the time the claim arises through the date of judgment"); Poliard v. Saintilus Day Care Ctr., No. 11 CV 5174, 2013 WL 1346238, at *5 (E.D.N.Y. Mar. 7, 2013) (applying interest compounded annually to back pay award). The court applies "the federal interest rate based on the average

46

rate of return on one-year Treasury bills for the relevant time period between the time the claim arises until the entry of judgment pursuant to 28 U.S.C. § 1961 (a)." <u>Levy v. Powell</u>, No. 00-cv-4499 (SJF), 2005 WL 1719972, at *3 (E.D.N.Y. July 22, 2005). Pre-judgment interest is thus calculated as follows:

> First, the [back pay] award[ ] should be divided pro rata over the appropriate time period. Second, once the award is divided, the average annual United States treasury bill rate of interest referred to in 28 U.S.C. § 1961 will be applied. Third and finally, in order to guarantee complete compensation to the plaintiff, the interest will be compounded annually.

<u>Id.</u> (alterations in original; citation and quotation marks omitted).

Here, the Title VII back pay award is $370,000. The relevant time period is January 30, 2011 (day after termination) to October 11, 2018 (date of judgment).[12] The average rate of return on one-year Treasury bills for this time period is .63%.[13] Applying the formula above, this Court finds that Small is entitled to $18,250.79 in pre-judgment interest on her federal back pay award.

The same method of calculation applies for Small's state law back pay award, but pre-judgment interest is calculated at 9% under New York CPLR § 5004. <u>See</u> <u>Marfia v. T.C. Ziraat Bankasi</u>, 147 F.3d 83, 90 (2d Cir. 1998) ("federal law does not apply to the calculation of prejudgment interest on supplemental state law claims"). Applying the same formula above using the New York interest rate, this Court finds that Small is entitled to $346,371.35 in pre-judgment interest on her state back pay award.

---

[12] For ease of calculation, this Court has rounded this time frame to 92 months.

[13] Calculated at <u>https://www.federalreserve.gov/datadownload/Choose.aspx?rel=H.15</u> (last visited April 4, 2019).

Finally, Small seeks post-judgment interest on her entire award, including attorneys' fees and costs. By statute, "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961 (a). Accordingly, this Court will grant post-judgment interest on the award reflected in the amended judgment under 28 U.S.C. § 1961 (a) running from October 11, 2018, the date of the original judgment. See Greenway v. Buffalo Hilton Hotel, 143 F.3d 47, 55 (2d Cir. 1998).

## IV. CONCLUSION

The jury determine that Defendants unlawfully subjected Pamela Small to discrimination and a hostile work environment and then retaliated against her when she complained about it. For the reasons stated above, the jury's determinations are supported by the evidence adduced at trial, and Defendants have failed to show that they are entitled to judgment as a matter of law or a new trial. Defendant Cuer, however, has demonstrated that the jury's $3.85 million compensatory damages award against him requires remittitur to $2.88 million, for the reasons stated herein. Finally, Small is entitled to recover $862,395.30 in reasonable attorneys' fees, $364,622.14 in pre-judgment interest, and $100,448.72 in costs. Post-judgment interest under 28 U.S.C. § 1961 (a) will run on the entire award from October 11, 2018, the date of the original judgment.

## V. ORDERS

IT HEREBY IS ORDERED, that Defendants' post-trial motions (Docket Nos. 204, 206) are GRANTED in part and DENIED in part, consistent with this Decision and Order.

FURTHER, that a new trial on damages against Defendant Carl Cuer will be scheduled by separate order if Plaintiff does not accept this Court's remittitur of

48

compensatory damages against Defendant Cuer from $3.85 million to $2.88 million. Plaintiff must file an affidavit within 10 days of the entry date of this Decision and Order advising whether she will accept the remittitur.

FURTHER, Plaintiff's Motion for Attorneys' Fees, Interest, and Costs (Docket No. 202) is GRANTED in part and DENIED in part, consistent with this Decision and Order. Defendants must pay Plaintiff $862,395.30 in attorneys' fees, $364,622.14 in pre-judgment interest, and $100,448.72 in costs, consistent with this Decision and Order.

FURTHER, that the Clerk of Court is directed to file an amended judgment against Defendants New York State Department of Corrections and Community Supervision, Sandra Dolce, and James Conway as follows:

> IT IS ORDERED AND ADJUDGED: that judgment is entered in Plaintiff's favor against Defendant New York State Department of Corrections and Community Supervision on Claims 1 and 2 in the amount of $2,488,250.79.
>
> FURTHER, that judgment is entered in Plaintiff's favor against Defendant Sandra Dolce on Claim 3 in the amount of $480,000.
>
> FURTHER, that judgment is entered in Plaintiff's favor against Defendant James Conway on Claim 3 in the amount of $240,000.
>
> FURTHER, that judgment is entered in Plaintiff's favor against Defendants New York State Department of Corrections and Community Supervision, Sandra Dolce, and James Conway in the amount of $862,395.30 for attorneys' fees.
>
> FURTHER, that judgment is entered in Plaintiff's favor against Defendants New York State Department of Corrections and Community Supervision, Sandra Dolce, and James Conway in the amount of $100,448.72 for costs.

FURTHER, that post-judgment interest under 28 U.S.C. § 1961 (a) will run from October 11, 2018.

FURTHER, that the amended judgment may be amended further to include Defendant Cuer once Plaintiff notifies this Court of her remittitur decision.

SO ORDERED.


Dated: April 14, 2019
      Buffalo, New York

<u>/s/William M. Skretny</u>
WILLIAM M. SKRETNY
United States District Judge